626 A.2d 114

**John PRICE, Appellant,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD, Metallurgical Resources, Aetna Life and Casualty Co., and Commonwealth of Pennsylvania, Respondents.**

Supreme Court of Pennsylvania.

Argued Dec. 4, 1991.

Decided May 27, 1993.

Reargument Denied July 14, 1993.

Eugene Mattioni, Francis X. Kelly, Philadelphia, for appellant.

Peter J. Weber, Andrew E. Greenberg, Philadelphia, for respondents.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

502

PAPADAKOS, Justice.

This is a Workmen's Compensation case. Appellant, John Price, appeals from a decision of the Commonwealth Court affirming the Workmen's Compensation Appeal Board which, in turn, affirmed a referee's decision denying benefits to Mr. Price on the grounds that his claim was barred by the statute of limitations.

We accepted allocatur in this case in order to clarify the law on two issues: when does the statute of limitations begin to run on a claim for total disability under the occupational disease provisions of the Workmen's Compensation Act,[1] and when is a claimant charged with knowledge that he or she suffers total disability as the result of an occupational disease.

We answer these questions at the outset by reiterating the rules previously established as follows.

■ The statute of limitations begins to run on claims for *total* disability due to occupational disease when the claimant knows or should know that he or she suffers from *total* disability due to occupational disease. This knowledge will most often occur following a medical diagnosis of the total disability due to occupational disease made known to the claimant. *Ciabattoni v. Birdsboro Steel Foundry and Machine Co.*, 386 Pa. 179, 125 A.2d 365 (1956).

■ While we recognize that a claimant can gain knowledge of total disability due to occupational disease by means other than a medical diagnosis, nevertheless, we view the rule stated above as establishing a strong presumption that discovery of an occupational disease resulting in total disability first occurs when a competent medical diagnosis is made known to the claimant.

■ Applying this rule to the facts of the instant case, we must reverse the order of the Commonwealth Court.

1. Act of June 2, 1915, P.L. 736, Art. 1 § 101 et. seq., as amended, 77 P.S. § 1 et. seq.

Over a period of thirty-five (35) years, Appellant was exposed to lead laden dust and loud noise on a daily basis in his employment as a maintenance man at a lead refining and smelting plant in Philadelphia, most recently known as Metallurgical Resources. From April 25, 1979 to May 29, 1979, Appellant did no work because of a disability due to lead absorption. During this period of no work, Appellant received compensation benefits. In August of 1979, Appellant resigned because, as he informed the employer's plant physician, Dr. McGraw, he could no longer work because of physical ailments caused by his working conditions, specifically his exposure to lead. However, it is clear from the record that Appellant told Dr. McGraw that he could continue to work as long as it was not within the lead plant, and that Dr. McGraw told him to apply for unemployment compensation, not disability compensation, until he could find other work. Dr. McGraw indicated that he would make out a notice that Appellant was able to work any place except in the lead plant or any place with any kind of lead dust. Appellant thereafter applied for, and received, about two months of unemployment compensation upon a finding that he was unemployed through no fault of his own and that he was able and available for full time work. The record, therefore, supports the conclusion that Appellant was not totally disabled for work at this time.

In March of 1983, Dr. Peter Gann examined Appellant and diagnosed him as suffering from lead encephalopathy, peripheral neuropathy, noise induced hearing loss, lead nephropathy, and severe chronic obstructive lung disease, and concluded that Appellant was totally disabled as a result thereof. Within thirty days of this diagnosis by Dr. Gann, Appellant filed a petition for compensation under the occupational disease provisions of the Workmen's Compensation Act, 77 P.S. §§ 411 and 27.1. Although the referee accepted Dr. Gann's testimony, he concluded that Appellant suffered from the symptoms of these diseases during or before 1979.

The referee further concluded that since Appellant was aware that his physical ailments were caused by his work activities at the time he resigned in August of 1979, his claim

for compensation was not filed within the three-year statute of limitations, 77 P.S. § 602.[2] Curiously, however, the referee failed to make a finding as to when Appellant's *total* disability began.

In his appeal, Appellant has acknowledged that he was aware when he resigned from his job in 1979 that he was suffering from a partial disability due to lead absorption, but that he was not suffering from a total disability. It was not until Dr. Gann diagnosed him as suffering a total disability due to lead absorption that he became aware of such, and that since he filed a petition within thirty (30) days of this diagnosis, his action was well within the time limitations. Appellant argues that the referee erred in applying the three year statute of limitations commencing from the time Appellant knew or was aware that he was suffering a work-related partial disability. He also claims that a claimant for occupational disease benefits should not be deemed to know that he is totally disabled because of the occupational disease without a competent medical diagnosis of such. We agree.

Initially, we note that the Commonwealth Court, in this case, in an unpublished opinion,[3] has ruled inconsistently with its *en banc* decision in *Findlay Refractories v. WCAB*, 52 Pa.Commonwealth Ct. 454, 462, 415 A.2d 1270, 1274 (1980), in which it stated, "If ... the three year period for filing a total disability claim were to be triggered by partial disability, an impossible result could arise because the onset of partial disability can easily occur more than three years before disability becomes total." We also note that the Commonwealth Court does not cite, distinguish or suggest overruling *Findlay* and neither do we. In his unpublished dissenting opinion filed

2. 77 P.S. § 602 provides in relevant part:
   In cases of personal injury all claims for compensation shall be forever barred, unless, within three years after the injury, ... The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

3. Although the unpublished opinions of our intermediate appellate courts are not available to the public in the normal avenues of publication, they are a part of the record filed with us in appeals.

in this matter, Senior Judge Barbieri points to this inconsistency quite clearly, as follows:

> Employer argues, and I read the Majority in agreement, that even if claimant was only partially disabled from lead absorption, when he terminated his employment on August 31, 1979, he should have filed a claim based thereon, but did not; and, accordingly, the three year limitation period of Section 315 of the Act, 77 P.S. § 602, commenced on August 31, 1979, to bar Claimant's petition which was not filed until March 31, 1983. If partial disability triggered Section 315's limitation period for filing a total disability claim founded upon an occupational disease, a claimant who became totally disabled more than three years after the onset of partial disability would be barred from filing a claim for total disability before it accrued. We have previously rejected this proposition as an unthinkable consequence.... *Findlay Refractories v. Workmen's Compensation Appeal Board,* 52 Pa.Commonwealth Ct. 454, 415 A.2d 1270 (1980).

(*Price v. Workmen's Compensation Appeal Board,* (1205 C.D. 1987 unpublished slip opinion filed April 18, 1990, pages 7–8).

Clearly, a claim for total disability benefits under the occupational disease provisions of the Workmen's Compensation Act cannot begin to run until the onset of total disability and to the extent that the Commonwealth Court decision in this case was in conflict with *Findlay,* it is overruled.

Having determined that a claim for total disability does not arise for purposes of the statute of limitations until the claimant is totally disabled from the work-related occupational disease, it becomes necessary for us to clarify the method in which we determine an awareness on the part of the claimant that his total disability is, in fact, work-related under the occupational disease provisions of the Act.

In *Ciabattoni v. Birdsboro Steel Foundry & Machine Co.,* 386 Pa. 179, 125 A.2d 365 (1956), we held that the limitation period of Section 315 of the Occupational Disease Act then in force, 77 P.S. § 1415, commenced when a claimant knew by competent medical diagnosis that a disability was caused by an

occupational disease. Following *Ciabaitoni,* the Commonwealth Court extended this discovery rule and held that in occupational disease claims under the workmen's compensation statute, the three year filing period under that law would begin *when that claimant knew or should have known of the disability and that it was an occupational disease. Jones & Laughlin Steel Co. v. Workmen's Compensation Appeal Board (Feiertag),* 90 Pa.Commonwealth Ct. 567, 496 A.2d 412 (1985).

Although *Ciabattoni* did not directly hold that a medical diagnosis is the only way a claimant for occupational disease benefits could become aware of the disability, it implied as much. *Ciabattoni* did not address the precise issue presented herein, but only whether the discovery rule applied to the time limitations for claims made under the Occupational Disease Act. However, in answering the issue in the affirmative, this Court's *dicta* suggested that the date a compensable disability due to occupational disease begins to run is the date when "pertinent medical diagnosis is completely established *to the knowledge* of the claimant." *Ciabattoni,* 386 Pa. at 182, 125 A.2d at 367 (emphasis in the original). This was so, the Court reasoned, because "an occupational disease is latent and insidious and the resultant disability is often difficult to determine." *Ciabattoni,* 386 Pa. at 184, 125 A.2d at 368.

We see no reason to raise a distinction between the total disability arising under the Occupational Disease Act and that arising under the occupational disease provisions of the Workmen's Compensation Act. In both instances a three year statute of limitations applies and in both instances we hold that the statute does not begin to run until "pertinent medical diagnosis is completely established *to the knowledge* of the claimant" that his total disability is work related. The instant claim for occupational disease benefits under the Workmen's Compensation Act began to run only after the medical diagnosis of the disability was made known to appellant in 1983 and Appellant's claim was, therefore, timely filed. Although evidence of record supports the referee's findings that Appellant attributed his physical ailments to lead exposure at the plant when he resigned on August 31, 1979, and that Appellant's

symptoms were present during or before 1979, it does not establish as a matter of law that he knew, or should have known, that he was *totally* disabled from his cumulative lead exposure. In fact, the uncontradicted facts, including findings of the referee, establish that Claimant's lead poisoning disability had terminated as of May 29, 1979, as certified by a final receipt signed May 30, 1979. At about this time, also, employer did a creatinine test which was then normal, but "definitely elevated" at the time of Dr. Gann's study in March of 1983. Claimant voluntarily resigned to avoid further lead exposure, reporting to employer's physician, Dr. T.E. McGraw, who advised him to apply for unemployment compensation benefits.

We can only conclude, as did Judge Barbieri:

Obviously, Claimant was still employable on August 31, 1979, when he last worked for Employer, and certainly when he qualified for unemployment benefits. Moreover, Claimant's condition was not one susceptible to self-diagnosis since his personality changes, apathy, irritability, cognitive deficits, muscle weakness and hypertension could be manifestations of countless other diseases unrelated to his occupation. Nor is it reasonable to infer that Claimant could, or should, have known that he suffered from lead encephalopathy, peripheral neuropathy and lead nephropathy prior to Dr. Gann's medical diagnosis thereof.

As demonstrated by the record, it was not until March 1983 when Claimant was medically advised of the full and total extent of his disability that he was in a position to file the instant claim. Inasmuch as Claimant's petition was filed less than one month later, it is timely under Section 315 of the Act, 77 P.S. § 602.

(Unpublished Dissenting Opinion, slip opinion, at pp. 4–6).

Accordingly, this matter is reversed and remanded to the Board for the awarding of benefits.

McDERMOTT, J., did not participate in the decision of this case.