646 A.2d 726

DEPARTMENT OF GENERAL SERVICES, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL
BOARD (PAUL), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 17, 1994.

Decided Aug. 9, 1994.

David F. Tamanini and Eric S. Scher, for petitioner.

Terry S. Hyman, for respondent.

Before COLINS and NEWMAN, JJ., SILVESTRI, Senior Judge.

COLINS, Judge.

The Department of General Services (DGS) petitions for review of an October 27, 1993 order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's (referee) decision to grant Michael Paul's (Paul) claim petition (petition) for benefits under the Workers' Compensation Act (Act).[1] For the reasons set forth herein, we affirm.

Paul was employed by DGS as a heating, ventilation, and air conditioning maintenance man beginning June 1978. As part of his employment, Paul used a briquette containing the chemical pentachlorophenol (PCP), a halogenated hydrocarbon, at least once a week to treat sump water contained in air conditioning towers located on the eleventh floor of the Health and Welfare Building in Harrisburg, Pennsylvania. This briquette would come into contact with Paul's skin, as no gloves were used on the job.

On May 16, 1979, Paul was given a blood test, the results of which showed, for the first time, abnormalities in his blood count. It was later confirmed that Paul suffered from aplastic anemia (disease). Despite these abnormalities, Paul continued to work until December 1979. In March 1980, as treatment for this disease, Paul underwent a bone marrow transplant which caused him to be sterile, and which caused a breakdown of his immune system. As a consequence of his immune system's breakdown, Paul contracted various diseases, including genital herpes, multiple fungal diseases and infections, and aseptic necrosis, which caused Paul to receive numerous hip operations. Consequently, Paul has been disabled since July 28, 1981 and has incurred related medical expenses totalling $113,716.73.

In his petition filed September 8, 1988, Paul alleged that while employed by DGS, he came into contact with PCP, which caused him to develop the disease, and that the disease

1. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §§ 1–1041.4.

was the cause of his subsequent illnesses. Paul also alleged that he did not discover the relationship between the disease and his work at DGS until November 1985. DGS filed a timely answer which denied all liability.

Hearings were conducted before the referee, at which both sides, represented by counsel, introduced expert medical evidence and other evidence in support of their respective positions. Paul presented the deposition testimony of Hyman Roberts, M.D. (Dr. Roberts) and Samuel Epstein, M.D. (Dr. Epstein), both of whom testified with a reasonable degree of medical certainty that Paul's disease was related to his exposure to PCP while employed by DGS. The testimony of the doctors was accepted as credible and accurate by the referee, and DGS does not challenge either doctor's conclusions in this petition for review.

On May 15, 1992, the referee issued an order which granted Paul's petition and awarded medical costs related to treatment of Paul's various illnesses in the amount of $113,716.73. DGS appealed to the Board, which affirmed the referee. DGS then timely filed this petition for review.[2]

According to Section 301(c)(2) of the Act, the term "injury" includes occupational diseases as defined by Section 108 of the Act. Section 108(c) of the Act specifically defines poisoning by halogenated hydrocarbons in any occupation involving exposure to them as an occupational disease. Since PCP is a halogenated hydrocarbon, Paul's petition is for benefits related to an occupational disease.

Regarding its first issue, DGS argues that the referee's finding that Paul exercised due diligence in determining the work-relatedness of his disease is not based on substantial evidence. Specifically, DGS argues that Paul was placed on notice of his disease in 1979, when he was tentatively diag-

2. This Court's scope of review in appeals from the Board is limited to determining whether claimant's constitutional rights were violated, an error of law was committed, or the findings of fact are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988), *appeal after remand on other grounds,* 143 Pa.Commonwealth Ct. 69, 598 A.2d 602 (1991).

nosed with the disease. DGS further argues that Paul, through the exercise of due diligence, should have discovered the work-relatedness of his disease, when he received a July 29, 1981 letter from Laurence Goldstein, M.D. (Dr. Goldstein), which stated, in pertinent part: "One of the *possibilities* is that [the disease] *somehow was related* to the chemicals he was exposed to on his job. He has therefore been instructed by me ... to assiduously avoid all unnecessary chemical exposure." (Emphasis added.)

The Supreme Court of Pennsylvania has held that "[w]hile ... a claimant can gain knowledge of total disability due to occupational disease by means other than a medical diagnosis, nevertheless, [there is] ... a *strong presumption that discovery of an occupational disease resulting in total disability first occurs when a competent medical diagnosis is made known to the claimant." Price v. Workmen's Compensation Appeal Board,* 533 Pa. 500, 502, 626 A.2d 114, 115 (1993) (emphasis added). DGS argues that the above-referenced letter from Dr. Goldstein communicated a diagnosis to Paul that related his disease to his work. We disagree, as this clearly equivocal statement cannot be considered a competent medical diagnosis. Further, we find no evidence in this record to suggest that Paul received any competent medical diagnosis that related his disease to his work at DGS prior to November 1985. Therefore, we conclude that there is no presumption of first discovery prior to November 1985.

Thus, the issue is whether the referee's finding in regards to when Paul knew or should have known of the work-relatedness of his injury is supported by substantial evidence. In this regard, Finding of Fact No. 24 states: "[Paul] did not know that his disability was caused by PCP or any work place chemicals despite reasonable diligence to obtain that information until November, 1985."

"It is well settled that it is solely within the referee's discretion to find facts and, if these facts are grounded in substantial evidence, ... this Court may [not] disturb them." *Pokita v. Workmen's Compensation Appeal Board (U.S. Air),* 163 Pa.Commonwealth Ct. 97, 100, 639 A.2d 1310, 1312 (1994).

We have defined substantial evidence as "such relevant evidence which a reasonable mind might accept as adequate to support a finding." *York Terrace/Beverly Enterprises v. Workmen's Compensation Appeal Board (Lucas)*, 140 Pa.Commonwealth Ct. 75, 79 n. 5, 591 A.2d 762, 764 n. 5 (1991).

At hearings before the referee, Paul testified that upon returning home from his transplant in May 1980, he requested information from his doctors as to what could have caused the disease. The doctors sent him a list of chemicals known to cause the disease, and, upon receiving this list, Paul cross referenced it with those chemicals he came into contact with at work; Paul found no chemicals that matched. From that point until 1985, Paul did nothing because he was unable to establish a connection between the disease and his work with DGS. Paul also testified before the referee that, prior to 1985, no physician had established a connection between his disease and his work at DGS.

In November 1985, Paul went to see his current counsel regarding a different matter. After Paul related his personal history, counsel raised the possibility that Paul's disease might somehow be connected to his work at DGS; counsel conducted further investigation and established the connection. Paul considered this to be his first notice of the connection between his disease and his work at DGS. It was not until after November 1985 that Paul received competent medical diagnoses relating his disease to his work at DGS. These opinions, formed by Dr. Roberts and Dr. Epstein after review of Paul's medical records and history, were the sole medical opinions establishing the causal connection; the referee accepted both doctors' testimony as credible. Based on our review of the record, we determine that the referee's finding is supported by substantial evidence. Accordingly, we are bound to accept it.

Regarding its second issue, DGS argues that Paul knew or should have known of the connection between his condition and his work place in 1981, and accordingly, Paul's claim petition was filed after the statute of limitations had expired.

According to Section 315 of the Act, the statute of limitations in workers' compensation cases is three years. 77 P.S. § 602. The Supreme Court has held that, "[t]he statute of limitations begins to run on claims for *total* disability due to occupational disease when the claimant knows or should know that he or she suffers from *total* disability due to occupational disease." *Price* 533 Pa. at 502, 626 A.2d at 115. In the case *sub judice,* the referee determined that Paul knew or should have known of the work-relatedness of his disease in November 1985; as stated above, this determination is based on substantial evidence. Since Paul filed his claim petition in September 1988, it was timely.

The referee's decision is based on substantial evidence, and no error of law was committed. Accordingly, we affirm the Board.

## ORDER

AND NOW, this 9th day of August, 1994, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed.