# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

East Hempfield Township, : 
                   Petitioner : 
                    : 
          v. : No. 1058 C.D. 2017 
                    : Submitted: December 22, 2017 
Workers' Compensation Appeal : 
Board (Stahl), : 
                   Respondent : 


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*


**MEMORANDUM OPINION**
**BY JUDGE BROBSON**         **FILED:  June 1, 2018**


       East Hempfield Township (Employer) petitions for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed a decision of the Workers' Compensation Judge (WCJ), thus granting Kenneth Stahl's (Claimant) claim petition for benefits under the Workers' Compensation Act (Act).[1]  For the reasons discussed below, we vacate and remand.

       Claimant began working as a volunteer firefighter for Employer in 2002.  Prior to joining Employer, Claimant worked as a volunteer firefighter for other fire departments since 1974.  In 2006, Claimant's family physician diagnosed Claimant with stomach cancer.  Following his diagnosis, Claimant underwent

---

[1]Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

surgery and radiation therapy to treat his illness. After being unable to work for approximately six weeks, Claimant returned to work for Employer as a fire police officer and no longer assumed the duties of a firefighter. Claimant later chose to retire, with his last day of employment being October 29, 2008.

On November 10, 2014, Claimant filed a claim petition, alleging that he sustained stomach cancer due to exposure to carcinogens during his tenure as a volunteer firefighter for Employer. (Reproduced Record (R.R.) at 1a-5a.) In so doing, Claimant sought payment of medical bills and full disability benefits from April 1 to June 1, 2006. (*Id.*) Employer opposed Claimant's petition, and a WCJ scheduled a hearing. In support of his claim petition, Claimant testified via deposition.

Claimant testified that during his tenure as a firefighter, he was exposed to smoke and diesel fuel emissions. (*Id.* at 175a-84a.) After being diagnosed with stomach cancer, Claimant transferred to the fire police position, as he "didn't want to risk going into anymore [sic] smoke . . . as a firefighter." (*Id.* at 203a.) Claimant testified that, as early as 2006 or 2007, he suspected there might be a connection between his firefighting duties and his stomach cancer. (*Id.* at 241a.)

Claimant testified that sometime after July 2011, he read an article discussing Pennsylvania's passage of a law regarding cancer in firefighters and how it may affect their rights under the Act. (*Id.* at 226a.) After reading this article, Claimant again suspected a connection between his service as a firefighter and his cancer diagnosis. (*Id.*) Thereafter, Claimant sought the services of an attorney to discuss his workers' compensation rights, and Claimant entered into a fee agreement with counsel on August 5, 2012. (*Id.* at 251a.)

2

Claimant further testified that on September 16, 2014, a doctor confirmed Claimant's beliefs regarding the relationship between Claimant's cancer and his service as a firefighter. (*Id.* at 194a.) This was the first time Claimant received any indication from a doctor that his service as a firefighter caused his cancer. (*Id.*) Thereafter, Claimant filed his claim petition. (*Id.* at 1a.)

By decision and order dated August 31, 2015, the WCJ granted Claimant's claim petition. (*Id.* at 58a.) Employer appealed to the Board. By opinion and order dated July 20, 2016, the Board opined that the WCJ erred in applying an inapplicable presumption to Claimant's claim and remanded the matter to the WCJ to render a determination without applying the presumption. (*Id.* at 64a.)

On remand, the WCJ again granted Claimant's claim petition. (*Id.* at 74a.) In so doing, the WCJ made the following pertinent conclusions of law:

> 6. The "discovery rule" referenced by the Pennsylvania Supreme Court in *Price v.* [*Workmen's Compensation Appeal Board*], 626 A.2d 114 ([Pa.] 1993) is equally applicable to Claimant's obligation to establish that notice of the work-related disease was provided to Employer in accordance with Section 311 of the Act[, 77 P.S. § 631]. Whether an employee has provided timely notice is a mixed question of law and fact. The courts had indicated that the 120-day notice period does not begin to run until an employee "knows or by the exercise of reasonable diligence, has reason to know of the injury and its possible relationship to [his] employment." Reasonable diligence has been defined as a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case. In *The Bullen Companies v.* [*Workers' Compensation Appeal Board*] *(Hausmann)*, 960 A.2d 488 (Pa. Cmwlth. 2008), [*appeal denied*, 972 A.2d 523 (Pa. 2009),] the court relying on *Sell* [*v. Workers' Compensation Appeal Board (LNP Engineering)*, 771 A.2d 1246 (Pa. 2001),] noted that the "Section 311 rule requires more than an employees' suspicion, intuition or belief." Likewise, in *A&J Builders, Inc. v.* [*Workers'*

3

> *Compensation Appeal Board*] *(Verdi)*, [78 A.3d 1233 (Pa. Cmwlth. 2013)], the court siting [sic] *Sell* reiterated that *a claimant's obligation to provide notice started with the receipt of a medical opinion confirming the injury and its relationship to the job.*
>
> . . . .
>
> 7. This [WCJ] had previously concluded, and the [Board] affirmed this conclusion, that Claimant provided timely notice in the instant dispute. Specifically, *although Claimant knew of a possibility that his cancer may have a link to his firefighting activities as evidenced by his acknowledgement he changed jobs because of a fear of recurrence or his acknowledgement that he had read an article about the passage of Act 46, it was not until he received a copy of the report prepared by [a doctor] dated September 16, 2014 that he knew that there was the causal link between his cancer and the firefighting activity and as such the 120[-]day notice period did not begin to run until September 16, 2014.* The Claim Petition, which Employer contends was the first notice it received of this claim, was filed on November 10, 2014, well within the 120-day notice period, but after the applicable 21-day notice set forth in [S]ection 311 of the Act.

(*Id.* at 80a-81a (emphasis added) (internal citations omitted).)

Employer appealed this decision to the Board, alleging that some of the WCJ's factual findings were unsupported by substantial evidence and that the WCJ made multiple errors of law. (*Id.* at 85a-86a.) Among Employer's challenges, it argued that the WCJ erred in concluding that Claimant provided sufficient notice to Employer of his cancer within 120 days, as required by Section 311 of the Act. By opinion and order dated July 6, 2017, the Board affirmed the WCJ's decision. (*Id.* at 90a.) Regarding Employer's argument that Claimant failed to provide timely notice, the Board reasoned:

> [Employer] also argues that the WCJ erred in finding that Claimant provided timely notice of his alleged cancer within 120 days as required by Section 311 of the Act, 77 P.S. § 631. We addressed this argument in our

4

prior Opinion in this matter. We noted that the WCJ found that the notice period did not begin to run until Claimant received a copy of [a doctor's] report on September 16, 2014, informing him of the causal link between his cancer and firefighting. *We noted that in occupational disease matters, it is generally recognized that the notice period does not begin to run until the claimant is advised by a physician that he has an occupational disease and that it is related to his work.* We noted Claimant's testimony that although he felt that there might be a connection between his cancer and firefighting, this suspicion was not confirmed until he received a letter from his attorney and a report from [a doctor] in September 2014. Before receiving this information, he had never been informed by any doctor that his cancer was related to his exposures as a firefighter. [The doctor's] report was dated September 16, 2014, and Claimant filed his Claim Petition on November 7, 2014, well within the 120-day time period proscribed [sic] by Section 311. As such, Claimant provided timely notice of his claim.

(*Id.* at 99a-100a (emphasis added) (internal citations omitted).)

Employer then filed the instant appeal. On appeal,[2] Employer argues that the Board erred in concluding that Claimant provided adequate notice of his cancer. Specifically, Employer argues that the Board erred by failing to analyze whether Claimant exercised reasonable diligence to discover the origins of his cancer.

Notice of a work-related injury is a prerequisite to receiving workers' compensation benefits, and the claimant bears the burden of showing that proper notice was given. *Gentex Corp. v. Workers' Comp. Appeal Bd. (Morack)*, 23 A.3d 528, 534 (Pa. 2011). The timing of the notice is governed by Section 311

___

[2] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

5

of the Act, which provides, in part, that a claimant must provide notice within 120 days of either the date of the injury or the date at which the claimant "knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment."[3] The discovery rule under Section 311 allows that "employees who suffer an injury that is not readily and immediately ascertainable have the same rights under the Act as those employees who sustain an injury . . . as long as they proceed with reasonable diligence." *Sell*, 771 A.2d at 1251. The standard of reasonable diligence requires "a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case." *Id.* (quoting *Cochran v. GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995)) (internal quotations omitted). While reasonable diligence is an objective standard, "it is sufficiently flexible to take into account the different capacities people have to deal with the circumstances they confront." *Id.* In order to trigger the running of the 120-day period for notice, a claimant must have: (1) knowledge or constructive knowledge, (2) of a disability, (3) which exists, (4) which results from an occupational disease or injury, and (5) which has a possible relationship to the

---

[3] Section 311 of the Act, relating to providing notice of injury to an employer, provides:

> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

77 P.S. § 631.

employment. *Allegheny Ludlum Corp. v. Workers' Comp. Appeal Bd. (Holmes)*, 998 A.2d 1030, 1034 (Pa. Cmwlth.), *appeal denied*, 13 A.3d 480 (Pa. 2010).

Here, the Board failed to properly analyze the issue of whether Claimant provided timely notice pursuant to Section 311 of the Act. In its opinion, the Board noted that "the notice period does not begin to run until the claimant is advised by a physician that he has an occupational disease and that it is related to his work." (R.R. at 100a.) In support of this assertion, the Board cited *Sell* and *Hausmann*. (*Id.*) Neither of these cases, however, directly support such an assertion, and this Court has previously stated as much. *See Allegheny Ludlum Corp.*, 998 A.2d at 1035-36 ("We do not believe that *Sell* stands for the broad proposition that a claimant may not be charged with knowledge of the connection between an injury and the claimant's work until the claimant receives an expert medical opinion.").

In *Sell*, the claimant (Sell) was a smoker who suffered from tightness in her chest, sore throat, coughing, and a runny nose. Sell worked with formaldehyde as part of her job, and she suspected that the chemicals she worked with might be causing some of her symptoms. Eventually, Sell was diagnosed and hospitalized for emphysema. Sell never discussed the cause of her emphysema with her treating physicians during her hospitalization. Following her hospitalization, Sell did not return to work, but she began looking "for a physician with knowledge of the chemicals and dust in her work environment," whom she did not find until almost nine months after she left work. That physician informed Sell that she could return to work if she exercised caution with regard to her exposure to formaldehyde, and Sell then informed her employer of this limitation and how formaldehyde had affected her health. *Sell*, 771 A.2d at 1249. The Supreme Court held that Sell could

7

not be charged with knowledge of her work-related injury until she received the physician's opinion that her exposure to formaldehyde aggravated her emphysema. *Id.* at 1253. In so holding, the Supreme Court opined:

> When read in its entirety, the record establishes that at the time Sell's emphysema was diagnosed, she was a layperson who thought that the formaldehyde in her work environment was harmful. Aware that she held an uninformed view, Sell sought out an expert who could tell her whether she was correct to think so. *In the exercise of reasonable diligence, and with notable persistence,* Sell located . . . a physician who confirmed her suspicions about formaldehyde and informed her on August 31, 1993[,] that exposure to the chemical exacerbated her emphysema. As the WCJ found, it was at this point, with a medical diagnosis in hand, that Sell had the knowledge that § [311] requires.

*Id.* at 1254 (emphasis added). Although the Supreme Court determined that the claimant in *Sell* only had the requisite knowledge to provide notice after receiving the physician's diagnosis, it was paired with the finding that Sell proceeded with reasonable diligence in acquiring that knowledge. *Id.*

Similarly, in *Hausmann*, the claimant had a kidney condition that he suspected to be related to his employment. Two years later, a physician confirmed the claimant's suspicions. On appeal, this Court affirmed a WCJ's finding that the claimant did not know his condition was job related until receiving the physician's confirmation. *Hausmann*, 960 A.2d at 493. In so holding, this Court opined:

> The record in this case fully supports the WCJ's finding that [the c]laimant did not know that his disease was job related until [a physician] so advised him in March 2005. Employer's contention to the contrary is based solely on [the c]laimant's testimony that he suspected in 2002 that his kidney problem was related to his job. As the Supreme Court held in *Sell,* however, Section 311's discovery rule requires more than an employee's suspicion, intuition or belief.

8

*Id.* Although this Court in *Hausmann* did acknowledge that the 120-day notice period begins to run when a doctor advises a claimant of the work-relatedness of the injury, this Court did not hold that the 120-day notice period can *only* begin to run at that point. Further, the issue of whether the claimant should have known of the work-relatedness of his injury through the exercise of reasonable diligence was not addressed.

While it is true that sufficient knowledge for the purposes of notice requires more than an employee's suspicion, to hold that the 120-day notice period can *only* begin once a claimant receives a physician's confirmation would be illogical. Such a holding would not only provide a claimant with a potentially unlimited timeframe in which to provide notice, but it would also serve to nullify the reasonable diligence requirement of Section 311 of the Act. Had the General Assembly intended to require a physician's confirmation to serve as the start of the notice period, it could have included straightforward language in the Act to that effect.

Here, Claimant testified that sometime after July 2011, he read an article discussing Pennsylvania's passage of a law regarding cancer in firefighters and how it may affect their rights under the Act. (R.R. at 226a.) Thereafter, Claimant sought the services of an attorney to discuss his workers' compensation rights and entered into a fee agreement with counsel on August 5, 2012. (*Id.* at 251a.) Then, two years after entering into a fee agreement, Claimant received a medical confirmation of the correlation between his firefighting duties and stomach cancer on or about September 16, 2014. (R.R. at 193a-94a, 269a-70a.) Claimant filed his claim petition on November 4, 2014, well within 120 days of finally receiving a physician's confirmation. (*Id.* at 1a.) The crux of the issue

9

relating to notice, however, is not when did Claimant *actually* know of the work-relatedness of his injury, but *when* Claimant, through the exercise of reasonable diligence, *should have known* the work-relatedness of his injury. *See Delaware Cty. v. Workers' Comp. Appeal Bd.*, 808 A.2d 965, 970 (Pa. Cmwlth. 2002), *appeal denied*, 825 A.2d 1262 (Pa. 2003). Claimant's actions from July 2011 to August 2012 could be interpreted as Claimant having more than just a bare suspicion regarding the work relatedness of his injury, more so than that which *Sell* held to be insufficient. In answering this inquiry, it must be determined whether Claimant made a reasonable effort to discover the cause of his injury under the facts and circumstances present in the case. *See Sell*, 771 A.2d at 1251. Both the WCJ and the Board failed to answer this critical inquiry.

Accordingly, we vacate the Board's order and remand the matter to the Board with instructions that the Board remand the matter to the WCJ for the WCJ to issue a new decision.

_____
P. KEVIN BROBSON, Judge

10

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

East Hempfield Township, : 
                Petitioner : 
                : 
         v. :    No. 1058 C.D. 2017 
                : 
Workers' Compensation Appeal : 
Board (Stahl), : 
                Respondent : 

# **O R D E R**

AND NOW, this 1ˢᵗ day of June, 2018, the order of the Workers' Compensation Appeal Board (Board) is hereby VACATED. The above-captioned matter is REMANDED to the Board with instructions that the Board remand the matter to the Workers' Compensation Judge (WCJ) for the WCJ to issue a new decision and order.

Jurisdiction relinquished.

 

                               _____

                               P. KEVIN BROBSON, Judge