# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Stahl, :
                Petitioner :
                 :
      v. : No. 1575 C.D. 2019
                 : Submitted: February 14, 2020
Workers' Compensation Appeal :
Board (East Hempfield Township), :
                Respondent :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**             **FILED: August 14, 2020**

Kenneth Stahl (Claimant) petitions for review of an order of the Workers' Compensation Appeal Board (Board), dated October 30, 2019. The Board affirmed a decision of a Workers' Compensation Judge (WCJ), denying Claimant's claim petition for failure to provide timely notice pursuant to Section 311 of the Workers' Compensation Act (Act).[1] For the reasons set forth below, we affirm the Board's order.

To fully understand how this matter is presently before the Court, a summary of the basic facts and procedural history from our decision of *East Hempfield*

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 631.

*Township v. Workers' Compensation Appeal Board (Stahl)*, 189 A.3d 1114 (Pa. Cmwlth. 2018) (*Stahl I*), is necessary and helpful:

Claimant began working as a volunteer firefighter for [East Hempfield Township (Employer)] in 2002. Prior to joining Employer, Claimant worked as a volunteer firefighter for other fire departments since 1974. In 2006, Claimant's family physician diagnosed Claimant with stomach cancer. Following his diagnosis, Claimant underwent surgery and radiation therapy to treat his illness. After being unable to work for approximately six weeks, Claimant returned to work for Employer as a fire police officer and no longer assumed the duties of a firefighter. Claimant later chose to retire, with his last day of employment being October 29, 2008.

On November 10, 2014, Claimant filed a claim petition, alleging that he sustained stomach cancer due to exposure to carcinogens during his tenure as a volunteer firefighter for Employer. In so doing, Claimant sought payment of medical bills and full disability benefits from April 1 to June 1, 2006. Employer opposed Claimant's petition, and a WCJ scheduled a hearing. In support of his claim petition, Claimant testified via deposition.

Claimant testified that during his tenure as a firefighter, he was exposed to smoke and diesel fuel emissions. After being diagnosed with stomach cancer, Claimant transferred to the fire police position, as he "didn't want to risk going into anymore [sic] smoke . . . as a firefighter." Claimant testified that, as early as 2006 or 2007, he suspected there might be a connection between his firefighting duties and his stomach cancer.

Claimant testified that sometime after July 2011, he read an article discussing Pennsylvania's passage of a law regarding cancer in firefighters and how it may affect their rights under the Act. After reading this article, Claimant again suspected a connection between his service as a firefighter and his cancer diagnosis. Thereafter, Claimant sought the services of an attorney to discuss his workers' compensation rights, and Claimant entered into a fee agreement with counsel on August 5, 2012.

2

Claimant further testified that on September 16, 2014, a doctor confirmed Claimant's beliefs regarding the relationship between Claimant's cancer and his service as a firefighter. This was the first time Claimant received any indication from a doctor that his service as a firefighter caused his cancer. Thereafter, Claimant filed his claim petition.

By decision and order dated August 31, 2015, the WCJ granted Claimant's claim petition. Employer appealed to the Board. By opinion and order dated July 20, 2016, the Board opined that the WCJ erred in applying an inapplicable presumption to Claimant's claim and remanded the matter to the WCJ to render a determination without applying the presumption.

On remand, the WCJ again granted Claimant's claim petition. In so doing, the WCJ made the following pertinent conclusions of law:

6. The "discovery rule" referenced by the Pennsylvania Supreme Court in *Price v. [Workmen's Compensation Appeal Board (Metallurgical Resources, Inc.)]*, 626 A.2d 114 ([Pa.] 1993) is equally applicable to Claimant's obligation to establish that notice of the work-related disease was provided to Employer in accordance with Section 311 of the Act . . . . Whether an employee has provided timely notice is a mixed question of law and fact. The courts had indicated that the 120-day notice period does not begin to run until an employee "knows or by the exercise of reasonable diligence, has reason to know of the injury and its possible relationship to [his] employment." Reasonable diligence has been defined as a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case. In *The Bullen Companies v. [Workers' Compensation Appeal Board] (Hausmann)*, 960 A.2d 488 (Pa. Cmwlth. 2008), [*appeal denied*, 972 A.2d 523 (Pa. 2009),] the court relying on *Sell [v. Workers' Compensation Appeal Board (LNP*

3

*Engineering)*, 771 A.2d 1246 (Pa. 2001),] noted that the "Section 311 rule requires more than an employees' suspicion, intuition or belief." Likewise, in *A&J Builders, Inc. v. [Workers' Compensation Appeal Board] (Verdi)*, [78 A.3d 1233 (Pa. Cmwlth. 2013)], the court siting [sic] *Sell* reiterated that *a claimant's obligation to provide notice started with the receipt of a medical opinion confirming the injury and its relationship to the job*.

. . . .

7. This [WCJ] had previously concluded, and the [Board] affirmed this conclusion, that Claimant provided timely notice in the instant dispute. Specifically, *although Claimant knew of a possibility that his cancer may have a link to his firefighting activities as evidenced by his acknowledgement he changed jobs because of a fear of recurrence or his acknowledgement that he had read an article about the passage of Act 46,[2] it was not until he received a copy of the report prepared by [a doctor] dated September 16, 2014 that he knew that there was the causal link between his cancer and the firefighting activity and as such the 120[-]day notice period did not begin to run until September 16, 2014*. The [c]laim [p]etition, which Employer contends was the first notice it received of this claim, was filed on November 10, 2014, well within the 120-day notice period, but after the applicable 21-day notice set forth in [S]ection 311 of the Act.

Employer appealed this decision to the Board, alleging that some of the WCJ's factual findings were unsupported by substantial evidence and that the WCJ made multiple errors of law. Among Employer's challenges, it argued

---

[2] Act of July 7, 2011, P.L. 251.

4

that the WCJ erred in concluding that Claimant provided sufficient notice to Employer of his cancer within 120 days, as required by Section 311 of the Act. By opinion and order dated July 6, 2017, the Board affirmed the WCJ's decision. Regarding Employer's argument that Claimant failed to provide timely notice, the Board reasoned:

> [Employer] also argues that the WCJ erred in finding that Claimant provided timely notice of his alleged cancer within 120 days as required by Section 311 of the Act . . . . We addressed this argument in our prior [o]pinion in this matter. We noted that the WCJ found that the notice period did not begin to run until Claimant received a copy of [a doctor's] report on September 16, 2014, informing him of the causal link between his cancer and firefighting. *We noted that in occupational disease matters, it is generally recognized that the notice period does not begin to run until the claimant is advised by a physician that he has an occupational disease and that it is related to his work.* We noted Claimant's testimony that although he felt that there might be a connection between his cancer and firefighting, this suspicion was not confirmed until he received a letter from his attorney and a report from [a doctor] in September 2014. Before receiving this information, he had never been informed by any doctor that his cancer was related to his exposures as a firefighter. [The doctor's] report was dated September 16, 2014, and Claimant filed his [c]laim [p]etition on November 7, 2014, well within the 120-day time period proscribed [sic] by Section 311 [of the Act]. As such, Claimant provided timely notice of his claim.

*Stahl I*, 189 A.3d at 1115-17 (emphasis in original) (record citations omitted).

5

Employer appealed the Board's decision to this Court, arguing that the Board committed an error of law by concluding that Claimant provided adequate notice of his cancer, because the Board failed to analyze whether Claimant exercised reasonable diligence to discover the origins of his cancer. By opinion and order dated June 1, 2018, we held that the Board failed to properly analyze the issue of whether Claimant provided timely notice pursuant to Section 311 of the Act, and, therefore, we vacated the Board's order and remanded the matter to the Board with instructions to remand the matter to the WCJ for the issuance of a new decision. In so doing, we reasoned:

> In its opinion, the Board noted that "the notice period does not begin to run until the claimant is advised by a physician that he has an occupational disease and that it is related to his work." In support of this assertion, the Board cited *Sell* and *Hausmann*. Neither of these cases, however, directly support such an assertion, and this Court has previously stated as much. *See Allegheny Ludlum Corp.* [*v. Workers' Comp. Appeal Bd. (Holmes)*], 998 A.2d [1030,] 1035-36 [(Pa. Cmwlth.)] ("We do not believe that *Sell* stands for the broad proposition that a claimant may not be charged with knowledge of the connection between an injury and the claimant's work until the claimant receives an expert medical opinion.")[, *appeal denied*, 13 A.3d 480 (Pa. 2010).]
>
> In *Sell*, the claimant (Sell) was a smoker who suffered from tightness in her chest, sore throat, coughing, and a runny nose. Sell worked with formaldehyde as part of her job, and she suspected that the chemicals she worked with might be causing some of her symptoms. Eventually, Sell was diagnosed and hospitalized for emphysema. Sell never discussed the cause of her emphysema with her treating physicians during her hospitalization. Following her hospitalization, Sell did not return to work, but she began looking "for a physician with knowledge of the chemicals and dust in her work environment," whom she did not find until almost nine months after she left work. That physician informed Sell

6

that she could return to work if she exercised caution with regard to her exposure to formaldehyde, and Sell then informed her employer of this limitation and how formaldehyde had affected her health. *Sell*, 771 A.2d at 1249. The Supreme Court held that Sell could not be charged with knowledge of her work[-]related injury until she received the physician's opinion that her exposure to formaldehyde aggravated her emphysema. *Id.* at 1253. In so holding, the Supreme Court opined:

> When read in its entirety, the record establishes that at the time Sell's emphysema was diagnosed, she was a layperson who thought that the formaldehyde in her work environment was harmful. Aware that she held an uninformed view, Sell sought out an expert who could tell her whether she was correct to think so. *In the exercise of reasonable diligence, and with notable persistence*, Sell located . . . a physician who confirmed her suspicions about formaldehyde and informed her on August 31, 1993[,] that exposure to the chemical exacerbated her emphysema. As the WCJ found, it was at this point, with a medical diagnosis in hand, that Sell had the knowledge that [Section 311] requires.

*Id.* at 1254 (emphasis added). Although the Supreme Court determined that [Sell] only had the requisite knowledge to provide notice after receiving the physician's diagnosis, it was paired with the finding that Sell proceeded with reasonable diligence in acquiring that knowledge. *Id.*

Similarly, in *Hausmann*, the claimant had a kidney condition that he suspected to be related to his employment. Two years later, a physician confirmed the claimant's suspicions. On appeal, this Court affirmed a WCJ's finding that the claimant did not know his condition was job related until receiving the physician's confirmation. *Hausmann*, 960 A.2d at 493. In so holding, this Court opined:

7

> The record in this case fully supports the WCJ's finding that [the c]laimant did not know that his disease was job related until [a physician] so advised him in March 2005. Employer's contention to the contrary is based solely on [the c]laimant's testimony that he suspected in 2002 that his kidney problem was related to his job. As the Supreme Court held in *Sell*, however, Section 311's discovery rule requires more than an employee's suspicion, intuition or belief.

*Id.* Although this Court in *Hausmann* did acknowledge that the 120-day notice period begins to run when a doctor advises a claimant of the work-relatedness of the injury, this Court did not hold that the 120-day notice period can *only* begin to run at that point. Further, the issue of whether the claimant should have known of the work[-]relatedness of his injury through the exercise of reasonable diligence was not addressed.

While it is true that sufficient knowledge for the purposes of notice requires more than an employee's suspicion, to hold that the 120-day notice period can only begin once a claimant receives a physician's confirmation would be illogical. Such a holding would not only provide a claimant with a potentially unlimited timeframe in which to provide notice, but it would also serve to nullify the reasonable diligence requirement of Section 311 of the Act. Had the General Assembly intended to require a physician's confirmation to serve as the start of the notice period, it could have included straightforward language in the Act to that effect.

Here, Claimant testified that sometime after July 2011, he read an article discussing Pennsylvania's passage of a law regarding cancer in firefighters and how it may affect their rights under the Act. Thereafter, Claimant sought the services of an attorney to discuss his workers' compensation rights and entered into a fee agreement with counsel on August 5, 2012. Then, two years after entering into a fee agreement, Claimant received a medical confirmation of the correlation between his firefighting duties and stomach cancer on or

8

about September 16, 2014. Claimant filed his claim petition on November [10], 2014, well within 120 days of finally receiving a physician's confirmation. The crux of the issue relating to notice, however, is not when did Claimant *actually* know of the work[-]relatedness of his injury, but when Claimant, through the exercise of reasonable diligence, *should have known* the work-relatedness of his injury. *See [Del.] Cty. v. Workers' Comp. Appeal Bd.[ (Baxter Coles)]*, 808 A.2d 965, 970 (Pa. Cmwlth. 2002), *appeal denied*, 825 A.2d 1262 (Pa. 2003). Claimant's actions from July 2011 to August 2012 could be interpreted as Claimant having more than just a bare suspicion regarding the work[-]relatedness of his injury, more so than that which *Sell* held to be insufficient. In answering this inquiry, it must be determined whether Claimant made a reasonable effort to discover the cause of his injury under the facts and circumstances present in the case. *See Sell*, 771 A.2d at 1251. Both the WCJ and the Board failed to answer this critical inquiry.

*Stahl I*, 189 A.3d at 1118-20 (record citations omitted).

On remand, the WCJ gave the parties the opportunity to present additional testimony on the issue of when, through the exercise of reasonable diligence, Claimant should have known of the work-relatedness of his stomach cancer, but the parties declined to present any such additional testimony. By decision and order dated November 20, 2018, the WCJ denied Claimant's claim petition for failure to provide timely notice pursuant to Section 311 of the Act. In so doing, the WCJ reasoned:

[T]his [WCJ] cannot find that Claimant knew of the work[-]relatedness of the injury when [he was] diagnosed with cancer, although he may have believed that there was some connection at that time. However, the facts of this case appear clear to this [WCJ] that once Claimant read the article in the publication *The Pennsylvania Fireman* about the passage of the cancer presumption law, this was enough for Claimant to retain a workers' compensation attorney as of August 5, 2012. Claimant specifically noted

9

that he had found an "expert—or a very good attorney for cancer presumption of workers' [compensation]." Although Claimant may have only had a stronger "suspicion" of the causal nexus at this point, what was troubling to this [WCJ] is the complete absence of any evidence between August 5, 2012[,] and April 16, 2014, when Claimant executed an affidavit for review by [a doctor] of any effort Claimant or anyone on behalf of Claimant made to inquire or establish the work-relatedness of Claimant's cancer and his firefighting activity. To do nothing for a period of approximately 19½ months, *i.e.*, more than a year and a half, cannot be construed by this [WCJ] as an "exercise of reasonable diligence." This [WCJ] also noted that[,] although Claimant has had regular check-ups for his stomach cancer since 2006, there is no indication in the record that he inquired of those health care providers concerning a causal nexus between his cancer and his firefighting activity, especially during the period from August 5, 2012[,] and April 16, 2014.

(WCJ's Decision, Nov. 20, 2018, at 6-7.) Claimant appealed the WCJ's decision to the Board, which affirmed. Claimant then petitioned this Court for review.

On appeal,[3] Claimant argues that the Board committed an error of law by affirming the WCJ's conclusion that he failed to provide timely notice pursuant to Section 311 of the Act. More specifically, Claimant contends that he did not know, or have reason to know, that his stomach cancer was potentially related to his work as a volunteer firefighter until he received a copy of his medical expert's report in September 2014. Claimant suggests that, because his burden of proof in a firefighter cancer claim—*i.e.*, to "establish that he has been diagnosed with a type of cancer related to [an International Agency for Research on Cancer (IARC)] Group 1 carcinogen[]"—requires uniquely technical and medically complex

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

evidence, there was simply no possible way that he knew or could have determined that his cancer was covered by the Act until he obtained the report from his medical expert. (Claimant's Br. at 18-19 (citing *City of Phila. Fire Dep't v. Workers' Comp. Appeal Bd. (Sladek)*, 195 A.3d 197, 207-08 (Pa. 2018)).) In other words, Claimant suggests that he "acted with the reasonable diligence required to properly provide notice of a rare and latent disease when he contacted counsel shortly after learning of the cancer presumption law." (Claimant's Br. at 20.) Claimant further contends that the WCJ improperly went beyond this Court's direction in *Stahl I*—*i.e.*, to consider whether Claimant acted with reasonable diligence between July 2011 and August 2012—and penalized him for the time that it took for his attorney to gather the necessary records and have a medical expert issue a report regarding the cause of his stomach cancer. Claimant suggests, rather, that the focus of the WCJ's inquiry should have been on whether Claimant, not his attorney or medical expert, exercised reasonable diligence, and that any inquiry into the efforts of Claimant's attorney to obtain a report from a medical expert would have resulted in a breach of the attorney-client privilege.

In response, Employer argues that the Board properly determined that the WCJ did not err by concluding that Claimant failed to exercise reasonable diligence as required by Section 311 of the Act. More specifically, Employer contends that Claimant is essentially seeking to relitigate the issue already decided by this Court in *Stahl I* and is "conflat[ing] the acquisition of sufficient knowledge with the separate and distinct concept that one must simultaneously exercise reasonable diligence." (Employer's Br. at 8.) In that regard, Employer suggests that Claimant's reliance on cases such as *Sell* and *Hausmann* in support of his contention that he could not have possessed the requisite knowledge under Section 311 of the Act until

11

September 2014 is misplaced because those cases: (1) were previously distinguished by this Court in *Stahl I*; and (2) only pertain to situations in which the claimants were found to have exercised reasonable diligence but still did not manifest the requisite knowledge required by Section 311 of the Act until a medical professional rendered an opinion on a work-related cause of their injuries. Employer further contends that, "in conformity with the directive placed by this [Court] in *Stahl I*, the WCJ properly relied upon substantial, competent evidence of record in determining that, based upon the facts and circumstances present, Claimant failed to make a reasonable effort to discover the cause of his injury." (Employer's Br. at 27-28.) Lastly, Employer contends that the WCJ did not improperly construe this Court's directive in *Stahl I* and properly considered Claimant's efforts between 2006 and 2014 when he determined that Claimant failed to exercise reasonable diligence.

Notice of a work-related injury is a prerequisite to receiving workers' compensation benefits, and the claimant bears the burden of showing that proper notice was given. *Gentex Corp. v. Workers' Comp. Appeal Bd. (Morack)*, 23 A.3d 528, 534 (Pa. 2011). The timing of the notice is governed by Section 311 of the Act, which provides, in part, that a claimant must provide notice within 120 days of either the date of the injury or the date on which the claimant "knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment."[4] The discovery rule set forth in

---

[4] Section 311 of the Act provides, in relevant part:

> Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf . . . shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed. However, in cases of injury resulting from . . . any . . . cause in which the nature of

12

Section 311 of the Act allows "employees who suffer an injury that is not readily and immediately ascertainable [to] have the same rights under the Act as those employees who sustain an injury that is, as long as they proceed with reasonable diligence." *Sell*, 771 A.2d at 1251. The standard of reasonable diligence requires "a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case." *Id.* (quoting *Cochran v. GAF Corp.*, 666 A.2d 245, 249 (Pa. 1995)). While reasonable diligence is an objective standard, "it is sufficiently flexible to take into account the different capacities people have to deal with the circumstances they confront." *Id.* In order to trigger the running of the 120-day period for notice under Section 311 of the Act, a claimant must have: (1) knowledge or constructive knowledge, (2) of a disability, (3) which exists, (4) which results from an occupational disease or injury, and (5) which has a possible relationship to the claimant's employment. *Allegheny Ludlum Corp.*, 998 A.2d at 1034.

Here, Claimant appears to suggest that, in every firefighter cancer case, the claimant cannot know or have reason to know that his cancer is related to his firefighting activities until such claimant obtains a report from his medical expert establishing the work-relatedness of his injury. We, however, already rejected this argument in *Stahl I*, when we concluded that the 120-day notice requirement set forth in Section 311 of the Act does not only begin to run once a claimant receives a medical expert's confirmation of the work-relatedness of his injury, but rather, it

---

the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment. The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

77 P.S. § 631.

also begins to run when a claimant, through the exercise of reasonable diligence, should have known of the work-relatedness of his injury. *See Stahl I*, 189 A.3d at 1119-20. In other words, we suggested that a determination of whether a claimant has satisfied the notice requirement set forth in Section 311 of the Act is fact specific and no one fact—including, but not limited to, the date on which a claimant obtains a medical report establishing a causal relationship between his injury and his job—is dispositive on this issue. We will not revisit this issue at this time. Additionally, in making this argument, Claimant appears to ignore that, in *Stahl I*, we indicated that the relevant inquiry is not simply whether Claimant actually knew or should have had reason to know that his firefighting activities caused his stomach cancer, but rather, *whether Claimant could have discovered the work-relatedness of his stomach cancer through the exercise of reasonable diligence* at any point prior to the time that he obtained the report from his medical expert. Thus, we must consider whether there is substantial evidence of record to support the WCJ's finding/conclusion that Claimant failed to exercise reasonable diligence in ascertaining a causal relationship between his stomach cancer and his firefighting activities.[5]

The WCJ focused his inquiry on Claimant's activity, or lack thereof, between August 5, 2012, the date on which Claimant retained his attorney to represent him in this matter, and April 16, 2014, the date on which Claimant executed an affidavit detailing his work, medical, family, and firefighting history to send to his medical expert. Ultimately, the WCJ concluded that Claimant failed to exercise reasonable diligence, because the record was devoid of any evidence of what, if anything,

---

[5] Whether a claimant provides proper notice of a work-related injury under Section 311 of the Act is a mixed question of law and fact. *Penske Logistics v. Workers' Comp. Appeal Bd. (Troxel)*, 132 A.3d 1029, 1035 n.6 (Pa. Cmwlth. 2015).

14

Claimant did from August 5, 2012, until April 16, 2014, to determine whether there was a causal relationship between his stomach cancer and his firefighting activities with Employer. Claimant initially suggests that the WCJ exceeded our direction in *Stahl I* because he did not limit his consideration to Claimant's actions from July 2011, when he read the article discussing Pennsylvania's passage of a law regarding cancer in firefighters and how it may affect their rights under the Act, and August 2012, when he retained his attorney. We disagree. While we may have stated in *Stahl I* that "Claimant's actions from July 2011 to August 2012 could be interpreted as Claimant having more than just a bare suspicion regarding the work[-]relatedness of his injury, more so than that which *Sell* held to be insufficient," we did not necessarily limit the WCJ's consideration to Claimant's actions during that timeframe. *Stahl I*, 189 A.3d at 1120. Rather, we merely suggested that Claimant could have had more than a mere suspicion that his stomach cancer was related to his firefighting activities at some point between July 2011 and August 2012. We did not foreclose the possibility that Claimant could have also developed more than a mere suspicion at some point after August 2012 but prior to September 2014.

Additionally, on remand, the WCJ gave Claimant the opportunity to present additional evidence to establish that he exercised reasonable diligence in attempting to discover a relationship between his stomach cancer and his firefighting activities with Employer. Claimant declined to present any such additional evidence and now contends that any inquiry into his efforts to determine the cause of his stomach cancer after he retained an attorney to represent him in this matter would result in a breach of the attorney-client privilege. We again disagree. The attorney-client privilege protects the disclosure of communications; it does not protect the

15

disclosure of the underlying facts. *See Custom Designs & Mfg. Co. v. Sherwin-Williams Co.*, 39 A.3d 372, 378 (Pa. Super.), *appeal denied*, 57 A.3d 71 (Pa. 2012).[6] Thus, Claimant could have presented factual evidence relative to the efforts that Claimant or his attorney undertook from August 2012 to April or September 2014 to determine whether Claimant's stomach cancer was related to his firefighting activities with Employer—*e.g.*, obtaining medical records or locating a medical professional with the requisite expertise. As a result, the substantial evidence of record, or more accurately the lack thereof, supports the WCJ's finding/conclusion that Claimant failed to exercise reasonable diligence in ascertaining a causal relationship between his stomach cancer and his firefighting activities. For these reasons, we cannot conclude that the Board committed an error of law by affirming the WCJ's conclusion that he failed to provide timely notice pursuant to Section 311 of the Act.[7]

Accordingly, we affirm the Board's order.

P. KEVIN BROBSON, Judge

---

[6] While we recognize that Pennsylvania Superior Court cases are not binding on this Court, such cases "offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Review*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[7] We note that Claimant could have possessed the requisite knowledge required by Section 311 of the Act as early as July 2011. We do not, however, need to consider this issue on appeal, because the WCJ based his finding/conclusion that Claimant failed to exercise reasonable diligence on Claimant's actions between August 5, 2012, and April 16, 2014, and Employer has not suggested that the WCJ erred by not concluding that Claimant failed to exercise reasonable diligence as early as July 2011, arguably because any such conclusion would not change the ultimate result in this case—*i.e.*, that Claimant failed to provide timely notice under Section 311 of the Act.

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kenneth Stahl, : 
     Petitioner :
         :
   v. : No. 1575 C.D. 2019
         :
Workers' Compensation Appeal :
Board (East Hempfield Township), :
     Respondent :

# **O R D E R**

AND NOW, this 14th day of August, 2020, the order of the Workers' Compensation Appeal Board is AFFIRMED.

              _____

              P. KEVIN BROBSON, Judge