IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carrier Corporation,                        :
                              Petitioner    :
                                            :
        v.                                  : No. 69 C.D. 2020
                                            : SUBMITTED: August 21, 2020
Workers' Compensation Appeal                :
Board (Haugh),                              :
                              Respondent    :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                                    FILED: November 13, 2020

        Carrier Corporation (Employer) petitions this Court for review of the January

14, 2020 order of the Workers' Compensation Appeal Board (Board), which

affirmed the decision of a workers' compensation judge (WCJ) granting James

Haugh (Claimant) benefits under the Workers' Compensation Act (Act).[1]  The issues

on appeal are whether Claimant provided timely notice of his work injury pursuant

to Section 311 of the Act[2] and whether the WCJ erred in concluding that

correspondence from Claimant's counsel to Claimant's medical expert was attorney

work product protected from disclosure.  After review, we affirm.

## I.  Background

        Claimant filed a claim petition on July 10, 2015, alleging that a work injury

sustained on October 1, 2014, caused an aggravation of arthritis in his shoulder.

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[2] 77 P.S. § 631.

Reproduced Record (R.R.) at 2a. Employer denied that Claimant's medical condition was causally related to his work activities or sustained in the course of his employment and argued that Claimant failed to provide notice of his work injury as required by the Act. *Id.* at 8a, 12a-13a. Claimant first notified Employer of the work injury on June 24, 2015,[3] approximately nine months following the date of the alleged work injury. *Id.* at 2a.

Claimant testified at hearings held before the WCJ on August 24, 2015, and August 29, 2016, and presented the deposition transcript and medical report of his treating physician, Mark Rodosky, M.D. Employer presented the deposition testimony of its medical expert, Victor Thomas, M.D., who performed an independent medical examination (IME) of Claimant on October 20, 2015.

### A. Claimant's Evidence

Claimant testified that he began working for Employer in July 2013 servicing industrial air conditioning units. R.R. at 28a, 38a-39a. This position required Claimant to move compressors weighing approximately three tons by means of I-beams and a chain pulley system. *Id.* at 33a-35a. The I-beams and chains weighed 70-100 pounds. *Id.* at 34a, 36a. Much of Claimant's work required him to lift heavy objects above his shoulders. *Id.* at 38a. Prior to working for Employer, Claimant serviced units in a commercial setting. *Id.* at 64a. Employer's industrial work involved servicing larger equipment using larger tools. *Id.*

When Claimant first began working for Employer, his shoulders were fatigued at the end of his workday. *Id.* at 39a. By January 2014, Claimant's shoulders began to ache at night, interfering with his ability to sleep. *Id.* Claimant experienced

---

[3] The claim petition alleges Employer was notified of the work injury on June 24, 2014. Reproduced Record (R.R.) at 2a. This date is in error and the parties agree that notice was provided on June 24, 2015. *Id.* at 55a.

2

numbness in his fingers and pain "like a toothache." *Id.* at 40a. After losing power in his right hand, Claimant had to use his left hand at work. *Id.* at 41a. In April 2014, Claimant sought treatment from his primary care physician (PCP), who referred Claimant to Dr. Rodosky. *Id.* at 41a-42a. Dr. Rodosky performed surgery on Claimant's right shoulder on October 2, 2014, and on Claimant's left shoulder in November 2015. *Id.* at 43a, 96a. After the surgeries, Claimant was restricted to lifting 20 pounds from floor to waist and 10 pounds from waist to chest, with no overhead lifting and no pushing or pulling. *Id.* at 96a. Claimant did not return to work following his first shoulder surgery because Employer did not have light-duty work available. *Id.* at 45a.

Claimant testified he continued to have difficulty sleeping and he could not sleep on his left or right shoulder. *Id.* at 96a. He treated the discomfort in his shoulders with Advil. *Id.* at 97a. Claimant used to bow hunt and play golf, but he was no longer able to participate in those activities. *Id.*

Claimant agreed that he experienced fatigue in his shoulders during his previous employment, but he had no difficulty with his range of motion at that time and he did not seek treatment for problems related to his shoulders. *Id.* at 46a, 53a. Claimant acknowledged during cross-examination that his shoulders felt worse during the period he worked for Employer. *Id.* at 55a. Claimant attributed it to working in general, stating that "you're going to get tired." *Id.* at 104a. While Claimant began treating with Dr. Rodosky in July 2014, he did not know what caused the pain in his shoulders, "[t]hey just hurt." *Id.* at 56a. Claimant admitted he told Dr. Rodosky what he did for a living, and the physical nature of his job with Employer, and that carrying heavy weights in an elevated position for Employer caused a worsening of his shoulder pain. *Id.* at 57a-59a.

3

In an application for short-term disability benefits filed with his union on September 23, 2014, Claimant selected "illness" as the nature of his disability, as Claimant did not believe the condition of his shoulders was work related. *Id.* at 99a. In a second application for short-term benefits filed on a February 11, 2015, Claimant once more indicated that his disability was due to sickness and not an injury or a work-related incident. *Id.* at 100a. Included in the February 11, 2015 application was a question regarding whether the disability was caused by a work-related incident, to which Claimant answered in the negative.[4] *Id.* Claimant understood that the surgery Dr. Rodosky performed was related to his arthritis, and Claimant was not told until April 2015 that the pain in his shoulders related to his employment. *Id.* at 48a, 104a.

Dr. Rodosky is an orthopedic surgeon specializing in the treatment of shoulder problems. *Id.* at 112a. He first treated Claimant on July 2, 2014, following a referral from Claimant's PCP. *Id.* at 114a. At that time, Claimant presented with bilateral shoulder pain and stiffness. *Id.* Claimant's symptoms, which included pain radiating down the arm into the elbow and forearm, were worse on the right side. *Id.* at 114a-15a. Claimant advised he had some preexisting pain in both shoulders that worsened after he started working for Employer. *Id.* at 115a.

---

[4] On August 7, 2020, Employer filed with this Court an Application to Quash Claimant's Supplemental Reproduced Record, which contains Claimant's two applications for short-term disability benefits. Employer objected to the documents on the basis that they were not admitted by the WCJ or made part of the record certified from the Board. Claimant argues the records were properly submitted with his Supplemental Reproduced Record because Claimant testified to their contents and the WCJ relied on this testimony when he concluded that Claimant was not aware of any relationship between his shoulder pain and his work activities. Employer is correct that Claimant's disability applications were never made a part of the certified record and it is well settled that this Court cannot consider evidence which was not part of the record before the administrative agency. *Anam v. Workmen's Comp. Appeal Bd. (Hahnemann)*, 537 A.2d 932, 935 (Pa. Cmwlth. 1988). Accordingly, we grant Employer's Application to Quash.

A physical examination revealed limitations in Claimant's range of motion, primarily on the right side, which also exhibited reduced strength. *Id.* at 116a-17a. Dr. Rodosky's diagnosis at that time, in the absence of imaging studies, was impingement of the right shoulder and rotator cuff pathology with glenohumeral arthritis, primarily on the right side. *Id.* at 119a. Dr. Rodosky ordered x-rays and a magnetic resonance imaging (MRI) study, the results of which indicated osteoarthritis in both shoulders, as well as partial thickness rotator cuff tears and degenerative tears of the labra. *Id.* at 119a-20a. When steroid injections failed to treat Claimant's symptoms, Dr. Rodosky performed surgery on Claimant's right shoulder on October 2, 2014. *Id.* at 121a. Dr. Rodosky understood that Claimant's job involved repetitive, overhead work where he lifted upwards of 100 pounds, activity that would aggravate underlying preexisting arthritis and could cause it to become more symptomatic. *Id.* at 127a-28a. Dr. Rodosky acknowledged that Claimant's arthritis preexisted his work for Employer; however, the type of work Claimant performed there "clearly substantially aggravated" his arthritis. *Id.* at 130a. While surgery improved the condition of Claimant's shoulders, Dr. Rodosky placed Claimant on permanent light-duty work restrictions. *Id.* at 124a, 127a. These restrictions were required to prevent further damage to his shoulders requiring treatment such as a joint replacement. *Id.* at 133a.

Dr. Rodosky confirmed that he first related Claimant's shoulder problems to Claimant's work for Employer in a June 9, 2015 narrative report sent to Claimant's counsel. *Id.* at 134a. Dr. Rodosky further confirmed that Claimant reported his pain increased when working for Employer, but he did not state that his job "aggravated" his symptoms. *Id.* at 148a.

Dr. Rodosky agreed on cross-examination that Claimant had no MRIs taken prior to his employment with Employer and that no comparison could be made of Claimant's condition from a previous point in time. *Id.* at 139a. Dr. Rodosky opined that Claimant's increased pain, which caused him to seek treatment, signified an aggravation of his condition. *Id.* at 131a. The surgery to Claimant's left shoulder took place approximately one year after Claimant stopped working for Employer; however, Dr. Rodosky attributed the increase in Claimant's left shoulder symptoms during that period to overuse of his left arm following his right shoulder surgery. *Id.* at 140a.

### B. Employer's Evidence

Employer's medical expert, Dr. Thomas, performed an IME of Claimant on October 20, 2015. *Id.* at 219a. In forming his opinion, Dr. Thomas considered the results of the IME, and Claimant's medical records and his hearing testimony, as well as the testimony of Dr. Rodosky. *Id.*

Claimant advised Dr. Thomas that he worked for Employer in a heavy industrial job and had no problems with either shoulder prior to 2014. *Id.* at 220a. On the date of the IME, Claimant complained of pain in both shoulders but reported that the pain in his right shoulder had lessened following surgery. *Id.* at 221a. Claimant's left shoulder surgery was scheduled to take place a few weeks after the IME. *Id.* Dr. Thomas noted that Claimant had less than normal range of motion in both shoulders, with the left shoulder "a little better than the right." *Id.* at 222a. Claimant's MRIs revealed advanced end-stage degenerative changes in both shoulders, including fraying of the labrum and rotator cuff, which would have developed over the course of many years. *Id.* at 222a-23a.

6

Dr. Thomas opined that Claimant's arthritis preexisted his work for Employer and Claimant's employment would not have aggravated his preexisting condition. *Id.* at 225a-26a. An aggravation of Claimant's arthritis would have required an "activity or incident or injury [causing] a substantial change," and Dr. Thomas found no evidence Claimant sustained any acute injury. *Id.* at 223a, 234a. Rather, Claimant's gradual symptom development was due to his arthritis, which would progress "regardless of activity or inactivity." *Id.* at 227a, 234a.

Medical records obtained from Claimant's PCP documented that Claimant presented in April 2014 with pain in both shoulders, right worse than left, and Claimant described his job as "physical work in refrigeration." *Id.* at 142a-43a. Claimant's PCP indicated he thought that Claimant's physical work "makes [Claimant's pain] worse." *Id.* at 143a.

At the August 29, 2016 hearing, counsel for Employer raised an issue regarding whether Claimant provided Employer notice of the work injury as required by Section 311 of the Act, which relevantly provides that, unless the employer has knowledge of the work injury, the employee must give notice of the work injury within 120 days of the injury's occurrence. Compensation is generally barred if notice is not provided. However,

> in cases of injury . . . in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.

77 P.S. § 631.

Employer's counsel advised that he sought a copy of a letter dated April 23, 2015, from Claimant's counsel to Dr. Rodosky. R.R. at 91a. Employer's counsel

7

speculated that the content of this letter would demonstrate Claimant knew that the arthritis in his shoulders was aggravated by his work for Employer but Claimant failed to provide timely notice of the injury to Employer. *Id.* at 91a-92a. Claimant's counsel argued that the letter represented protected attorney work product. *Id.* at 92a.

## C. First WCJ Decision

On January 12, 2017, the WCJ issued a decision granting the claim petition. *Id.* at 273a. The WCJ concluded that Claimant sustained his burden of establishing he suffered a work injury on October 1, 2014. *Id.* at 271a. The WCJ summarized the testimonies of Claimant and Dr. Rodosky and deemed them credible. *Id.* at 263a-64a. The WCJ found Dr. Rodosky was more credible than Dr. Thomas because Dr. Rodosky was Claimant's treating physician and his clinical and surgical findings comported with Claimant's credible description of his symptoms and the demanding nature of his employment. *Id.* at 270a, Finding of Fact (F.F.) No. 1. Based on the credibility findings, the WCJ rejected Dr. Thomas's conclusion that Claimant's symptoms were solely attributable to degenerative changes that predated his employment. *Id.* The WCJ denied Employer's request to review the April 23, 2015 letter from Claimant's counsel to Dr. Rodosky on the grounds it constituted protected attorney work product. *Id.* at 270a-71a.

Employer appealed to the Board, arguing that Claimant failed to give notice as required by Section 311 of the Act and that the WCJ erred in denying access to the April 23, 2015 letter from Claimant's counsel to Dr. Rodosky. The Board rejected Employer's contentions regarding the April 23, 2015 letter, noting that admission of evidence is committed to the sound discretion of the WCJ. R.R. at 292a. The Board concluded, however, that the WCJ erred when he failed to make

8

specific findings with regard to whether, and when, Claimant provided Employer timely notice of his work injury. *Id.* Accordingly, the Board remanded the matter to the WCJ for further fact-finding on the issue of notice. *Id.* at 293a.

### D. Second WCJ Decision

The WCJ circulated a second decision on April 17, 2018, affirming its prior decision to grant the claim petition. *Id.* at 299a. Regarding notice, the WCJ credited the testimony of Claimant that he was not aware prior to April 2015 – the period during which Claimant retained counsel – that the symptoms in his shoulders were related to his employment and job activities. *Id.* at 298a. While Claimant told Dr. Rodosky that lifting heavy objects at work increased the pain in his shoulders, he was not advised that his work for Employer aggravated his arthritic condition. *Id.* Dr. Rodosky credibly testified that the issue of causation first arose in his June 9, 2015 narrative report. *Id.* at 299a. Given these findings, the WCJ concluded that the notice to Employer provided on June 24, 2015, comported with the applicable requirements of the Act. *Id.*

Employer again appealed to the Board, reiterating its argument that the WCJ failed to address whether Claimant notified it of the alleged work injury within 120 days of its occurrence. The Board agreed with Employer, noting that under Section 311 of the Act, the 120-day notice period for claimants who suffer an injury that is not immediately ascertainable begins to run once a claimant knows, or should know through the exercise of reasonable diligence, of the injury's existence and its possible relationship to his employment.[5] *Id.* at 369a-70a. Therefore, the Board

---

[5] One Board member dissented, stating that the evidence and testimony presented was uncontested and the issue of whether Claimant should have known of the relationship between his disability and his job was a question of law. R.R. at 372a.

remanded the matter to the WCJ to address when, through the exercise of reasonable diligence, Claimant should have known his injury was work related. *Id.* at 371a.

Claimant filed a petition for reconsideration with the Board, arguing that the evidence in the record demonstrated Claimant acted with reasonable diligence once he knew his condition was work related. Claimant argued he was unaware that his condition was work related until June 9, 2015, when Dr. Rodosky rendered an opinion to that effect. *Id.* at 374a. Claimant reported to his PCP in April 2014 and Dr. Rodosky in June 2014 that he experienced increased pain when working. *Id.* at 375a. He did not know, however, that the pain was related to his job. *Id.* This fact is evidenced by Claimant's credible testimony that he did not report his condition as work related when filing for short-term disability benefits. *Id.* at 375a. Claimant first suspected his condition was work related in April 2015, at which time he obtained counsel. *Id.* at 377a. Dr. Rodosky sent a causation letter on June 9, 2015, linking the aggravation of Claimant's arthritis to his work activities. *Id.* In light of these findings, Claimant requested the Board reconsider its prior decision and affirm the WCJ.

The Board granted Claimant's reconsideration petition on July 17, 2019, and circulated an opinion affirming the WCJ on January 14, 2020. The Board concluded that the evidence demonstrated that Claimant was not aware of the work-related injury until Dr. Rodosky issued his June 9, 2015 narrative report. *Id.* at 466a. Claimant provided Employer notice of his work injury on June 24, 2015. *Id.* As such, Claimant complied with the reasonable notice provisions of Section 311 of the Act. *Id.*

This appeal followed.

10

## II. Issues

On appeal,[6] Employer argues that the WCJ erred in granting benefits under the Act where Claimant did not provide timely notice of his alleged October 1, 2014 work injury and the WCJ erred in concluding that the April 23, 2015 letter from Claimant's counsel to Dr. Rodosky constitutes protected attorney work product.[7]

## III. Analysis

### A. Notice under Section 311 of the Act

Employer argues the WCJ erred in concluding that Claimant provided Employer timely notice of his work injury. Employer maintains that Claimant knew his shoulders hurt as a result of his work for Employer and Claimant was advised of the relationship between his shoulder problems and his work duties by his PCP in April 2014 and Dr. Rodosky in June 2014. Employer submits that Claimant's knowledge of this connection is documented in the records of his PCP, who noted Claimant's "physical work in refrigeration" and opined that this work made Claimant's shoulder problems worse. R.R. at 143a. Employer argues that, based on this evidence, the WCJ should have concluded that Claimant failed to provide Employer timely notice of his work injury, as required by Section 311 of the Act.

Timely notice of a work-related injury is a prerequisite to receiving workers' compensation benefits, and the claimant bears the burden of showing that proper

---

[6] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704; *Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap)*, 81 A.3d 830, 838 (Pa. 2013). Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *McCabe v. Workers' Comp. Appeal Bd. (Dep't of Revenue)*, 806 A.2d 512 (Pa. Cmwlth. 2002).

[7] Employer raised five separate issues in its principal brief, the first four of which relate to the question of whether Claimant provided notice as required by Section 311 of the Act. We have consolidated these issues for the sake of economy.

11

notice was given. *East Hempfield Twp. v. Workers' Comp. Appeal Bd. (Stahl)*, 189 A.3d 1114, 1117 (Pa. Cmwlth. 2018). Unless the employer has knowledge of the work injury, Section 311 of the Act requires that the employee give notice of the work injury within 120 days of its occurrence. Where the injury, and its connection to the claimant's employment, is not known, the notice period in Section 311 does "**not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.**" 77 P.S. § 631 (emphasis added).

With regard to notice under Section 311, the critical issue to be determined is not when a claimant actually knew of the work-relatedness of his injury, but when the claimant, "through the exercise of reasonable diligence, *should have known* the work-relatedness of his injury." *Stahl*, 189 A.3d at 1120 (emphasis in original). Reasonable diligence requires "a reasonable effort to discover the cause of an injury under the facts and circumstances present in the case." *Id. Sell v. Workers' Comp. Appeal Bd. (LNP Eng'g)*, 771 A.2d 1246, 1251 (Pa. 2001). While reasonable diligence is an objective standard, it considers the different capacities employees have to deal with the circumstances they confront. *Stahl*, 189 A.3d at 1118. Section 311's discovery rule "calls for more than an employee's suspicion, intuition or belief . . . ." *Sell*, 771 A.2d at 1253.

Employer's argument that Claimant knew the condition of his shoulders was related to his employment is belied by the testimonies of Claimant and Dr. Rodosky, both of whom the WCJ found credible. This Court's role is not to reweigh the evidence or review the credibility of the witnesses. *Sell*, 771 A.2d at 1251. The WCJ has exclusive province over questions of credibility and evidentiary weight. *A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi)*, 78 A.3d 1233, 1238 (Pa.

Cmwlth. 2013). The WCJ may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Id.* Whether the record contains evidence to support findings other than those made by the WCJ is irrelevant; the critical inquiry is whether the record supports the findings actually made. *A & J Builders*, 78 A.3d at 1238. We must view the evidence in the light most favorable to the prevailing party and give it the benefit of all inferences reasonably deduced therefrom. *Id.* at 1239.

To that end, we cannot agree with Employer that the evidence demonstrates Claimant knew prior to April 2015 that the condition of his shoulders was connected to his work activities. It is undisputed that Claimant's arthritis preexisted his work for Employer and Claimant experienced fatigue in his shoulders during his prior employment. Claimant's work for Employer, however, involved the use of heavier equipment and larger tools than those Claimant used in his previous employment. By January 2014, Claimant's fatigue had progressed to pain "like a toothache" that affected Claimant's ability to sleep at night. R.R. at 40a. Claimant saw his PCP in April 2014 and received a referral for treatment from Dr. Rodosky. Employer is correct that a note from Claimant's PCP indicated that he believed Claimant's physical work made his shoulder pain worse. There is no evidence, however, that Claimant's PCP shared this opinion with Claimant and Dr. Rodosky credibly testified that he did not relate Claimant's condition to his work until he drafted the June 9, 2015 narrative report.

Although Claimant complained of shoulder pain, and he testified that it increased when he worked, Claimant credibly testified that he was not aware his disability was work related until April 2015. On two separate occasions, when applying for short term disability benefits, Claimant submitted paperwork indicating

13

that his condition was caused by illness. Claimant did so because he did not believe his disability was work related.

Based on the credited testimony of Claimant and Dr. Rodosky, the WCJ determined that Claimant's condition was first related to his work for Employer in Dr. Rodosky's June 9, 2015 narrative report. As notice to Employer was provided on June 24, 2015, the WCJ concluded that the requirements of Section 311 were satisfied.

Employer's challenge to the WCJ's findings is, at its essence, an attack on the WCJ's credibility determinations, which we will not overturn on appeal. Beyond its insistence that Claimant "knew" his disability was related to his work activities, Employer has not cited any evidence which supports a conclusion that Claimant failed to make a reasonable effort to discover the cause of his injury and, consequently, failed to exercise reasonable diligence.

Claimant testified he related his shoulder problems to his work activities in April 2015, at the time he retained counsel. Even if we charge Claimant with this knowledge as of April 1, 2015, however, the notice provided to Employer on June 24, 2015 was well within the 120-day period established in Section 311 of the Act.

We therefore discern no error in the WCJ's conclusion that Employer was provided timely notice of Claimant's work injury.

### B. Attorney Work Product

Next, Employer insists the WCJ erred in finding the April 23, 2015 letter from Claimant's counsel to Dr. Rodosky is attorney work product protected from disclosure.

The attorney work-product doctrine serves to safeguard the mental processes of an attorney and to protect material prepared by the attorney, regardless of whether

14

it is confidential. *Bagwell v. Pa. Dep't of Educ. (Bagwell)*, 103 A.3d 409, 416 (Pa. Cmwlth. 2014). The doctrine applies to records that are the work product of an attorney and may extend to the product of an attorney's representative secured in anticipation of litigation. *Id.* at 415. However, when evaluating whether materials are protected by the work-product doctrine, the courts have relied upon the doctrine's embodiment in a specific rule or statute governing the proceeding. *Maleski by Chronister v. Corp. Life Ins. Co.*, 641 A.2d 1, 5 (Pa. Cmwlth. 1994). Pennsylvania courts do not recognize a common law work-product doctrine. *Id.*

In *Barrick v. Holy Spirit Hospital of the Sisters of Christian Charity*, 91 A.3d 680 (Pa. 2014), our Supreme Court established a bright-line rule denying discovery of communications between attorneys and expert witnesses. *Barrick*, however, involved an interpretation of Rule 4003.3 of the Rules of Civil Procedure, which does not apply in workers' compensation matters. Pa.R.C.P. No. 4003.3.

In the workers' compensation realm, Section 131.61(a) of the Special Rules of Administrative Practice and Procedure before WCJs (Rules) requires that the parties exchange "all items and information . . . to be used in or obtained for the purpose of prosecuting or defending a case, *unless the foregoing are otherwise privileged* or unavailable . . . ." 34 Pa. Code § 131.61(a) (emphasis added). Section 131.70(a) of the Rules additionally provides that a party is entitled to receive a copy of "a statement previously made concerning the petition or its subject matter by that party, another party or a witness." 34 Pa. Code § 131.70(a). However, this rule does not apply to statements made by a party to the party's counsel which are protected by the attorney-client privilege or as the work product of counsel. 34 Pa. Code § 131.70(c). "Party" is defined in Section 131.5 of the Rules as "a claimant, defendant, employer, insurance carrier, additional defendant, health care provider and, if

15

relevant, the Commonwealth and the Uninsured Employers Guaranty Fund." 34 Pa. Code § 131.5.

Employer is correct that the letter from Claimant's counsel to Dr. Rodosky is not work product protected by the Rules, as it does not constitute a statement made by a party to the party's counsel. This conclusion does not end our analysis, however, as we must determine whether the WCJ's error mandates reversal or a remand for further proceedings.

As noted by the Board in its first decision, the admission of evidence is within the sound discretion of the WCJ. *Washington v. Workers' Comp. Appeal Bd. (Com. of Pa. State Police)*, 11 A.3d 48, 59 (Pa. Cmwlth. 2011). A WCJ's determination regarding the admission of evidence will not be overturned without a showing of an abuse of that discretion. *Id.* An abuse of discretion occurs where the WCJ's judgment is manifestly unreasonable, where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will. *Allegis Grp. & Broadspire v. Workers' Comp. Appeal Bd. (Coughenaur),* 7 A.3d 325, 327 n.3 (Pa. Cmwlth. 2010). A WCJ may properly exclude evidence that is irrelevant, confusing, misleading, cumulative, or prejudicial. *Washington*, 11 A.3d at 59.

We cannot agree that production of the April 23, 2015 letter, which purportedly contains hearsay statements from Claimant connecting his disability to his work, would result in the introduction or discovery of any evidence not already produced, as the "smoking gun" Employer alleges the letter contains is already in the record. Claimant was aware in April 2014 that his work for Employer caused an increase in his shoulder pain. Claimant's recognition of this pain does not translate into a concomitant understanding that Claimant's work activities aggravated his preexisting arthritis, and the WCJ accepted Claimant's testimony that he was not

16

aware his condition had worsened as a consequence of his job. Claimant was subject to cross-examination and re-cross-examination by Employer at two hearings before the WCJ, and Claimant maintained throughout that he was not aware, prior to April 2015, that his shoulder problems were connected to his employment.

Moreover, any error the WCJ may have made in characterizing the letter as attorney work product is harmless, given that any statements made by Claimant to his counsel which are protected by the attorney-client privilege are explicitly protected from disclosure by Section 131.70(c) of the Rules. The attorney-client privilege acts to protect confidential client-to-attorney communications made for the purpose of obtaining legal advice. *Dages v. Carbon County*, 44 A.3d 89, 92-93 (Pa. Cmwlth. 2012). The purpose of the attorney-client privilege is to benefit the client, who is the holder of the privilege. *See Maleski v. Corp. Life Ins. Co.*, 641 A.2d 1, 4 (Pa. Cmwlth. 1994). Generally, the privilege is deemed waived once attorney-client communications are disclosed to a third party. *Township of Neshannock v. Kirila Contractors, Inc.*, 181 A.3d 467, 475 (Pa. Cmwlth. 2018). Presently, however, there is no evidence to suggest that *Claimant*, as the holder of the privilege, disclosed the content of any communications he made to counsel to a third party.

### IV. Conclusion

The WCJ correctly concluded that Claimant provided timely notice to Employer of his work injury and the WCJ committed no abuse of discretion in excluding from evidence the letter from Claimant's counsel to Dr. Rodosky. Accordingly, the order of the Board is affirmed.

_____
ELLEN CEISLER, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Carrier Corporation,                         :
                    Petitioner               :
                                             :
        v.                                   :   No. 69 C.D. 2020
                                             :
Workers' Compensation Appeal                 :
Board (Haugh),                               :
                    Respondent               :

# **O R D E R**

AND NOW, this 13th day of November, 2020, the January 14, 2020 order of the Workers' Compensation Appeal Board is hereby AFFIRMED. Carrier Corporation's Application to Quash the Supplemental Reproduced Record filed by James Haugh is hereby GRANTED.

_____
ELLEN CEISLER, Judge