# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| James Gilbert, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 650 C.D. 2024 |
| | : | Argued: March 4, 2025 |
| South Whitehall Township | : | |
| (Workers' Compensation Appeal | : | |
| Board), | : | |
| Respondent | : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE STACY WALLACE, Judge (P.)
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
PRESIDENT JUDGE COHN JUBELIRER         FILED: June 12, 2025

James Gilbert (Claimant) petitions for review of the May 9. 2024 Order of the Workers' Compensation Appeal Board (Board) upholding a Workers' Compensation Judge's (WCJ) dismissal of a Claim Petition (Petition) as untimely because the Petition was not filed within the three-year period required by Section 315 of the Workers' Compensation Act (Act),[1] 77 P.S. § 602. On appeal, Claimant

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 602. Section 315 provides, in pertinent part:

> In cases of personal injury all claims for compensation shall be forever barred, **unless, within three years after the injury,** . . . **one of the parties shall have filed a petition** . . . . However, in cases of injury resulting from ionizing radiation in which the nature of the injury or its relationship to the employment is not known to the employe, **the time for filing a claim shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment**. The term "injury"

**(Footnote continued on next page…)**

argues the Board and the WCJ erred because Section 301(f) provides that firefighter cancer claims may be made within 600 weeks after the last date of employment, 77 P.S. § 414,[2] and that provision supersedes Section 315's shorter limitations period. Claimant alternatively asserts that if Section 315 does apply, the Petition was still not untimely. However, our precedent has previously stated that Sections 315 and 301(f) are to be read *in pari materia*, and that both sections can apply in firefighter cancer claims. Moreover, the Supreme Court's decision in *City of Johnstown v. Workers' Compensation Appeal Board (Sevanick)*, 255 A.3d 214 (Pa. 2021), did not address the interplay between Sections 315 and 301(f), as in *Sevanick*, there was no issue regarding the timeliness of the claim under Section 315. Finally, because by his own testimony Claimant was aware of the relationship of his diagnosis to his work as a firefighter, we cannot find that his Petition was timely. We are, therefore, constrained to affirm.

---

in this section means, **in cases of occupational disease, disability resulting from occupational disease**.

*Id.* (emphasis added).

[2] Section 301(f) was added by Section 2 of the Act of July 7, 2011, P.L. 251. Relevantly, Section 301(f) provides:

**Notwithstanding the limitation** under [Section 301](c)(2)[, 77 P.S. § 411(2),] with respect to disability or death resulting from an occupational disease having to occur within three hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease, **claims filed pursuant to cancer suffered by the firefighter under [S]ection 108(r)**[, 77 P.S. § 27.1(r), added by the Act of October 17, 1972, P.L. 930, and Section 1 of the Act of July 7, 2011, P.L. 251,] **may be made within six hundred weeks after the last date of employment in an occupation or industry to which a claimant was exposed to the hazards of disease.** The presumption provided for under this subsection shall only apply to claims made within the first three hundred weeks.

77 P.S. § 414 (emphasis added).

2

## I. BACKGROUND

### A. *The Petition*

The facts in this matter are not disputed. Claimant joined Woodlawn Volunteer Fire Department (Woodlawn) as a fire police volunteer around 2006, a position that does not involve active firefighting duties but does require presence at active fires. Woodlawn provides firefighting services for South Whitehall Township (Employer). Prior to joining Woodlawn, Claimant volunteered as a firefighter for Tri-Clover Volunteer Fire Company (Tri-Clover) beginning in 1992 or 1993. On or about February 8, 2018, Claimant was diagnosed with prostate cancer, for which he received medical treatment and suffered a wage loss[3] from March 5, 2018, to April 15, 2018. Claimant filed the Petition on January 23, 2023, asserting that his prostate cancer was compensable "pursuant to Sections 301(c)(2), 108(r), 301(f)[,] and 108(n) of the . . . []Act[4] as a result of his direct exposure to [International Agency for Research on Cancer (]IARC[)] Group I carcinogens while working as a fire police/volunteer firefighter for [Employer]." (WCJ's Decision, Finding of Fact (FOF) ¶ 2.) Claimant sought payment of medical expenses and total temporary disability benefits for the period he suffered a wage loss due to cancer. Employer filed a timely answer, denying the Petition's material averments. Employer also asserted the Petition was time barred by Section 315.

---

[3] Claimant, who is employed full time as a librarian, missed work and did not report to any calls for Woodlawn during this period due to his cancer.

[4] Section 108(r) defines "occupational disease" to include "[c]ancer suffered by a firefighter which is caused by exposure to a known carcinogen which is recognized as a Group 1 carcinogen by the International Agency for Research on Cancer." 77 P.S. § 27.1(r). Section 108(n) defines occupational disease to include: "All other diseases (1) to which the claimant is exposed by reason of his employment, and (2) which are causally related to the industry or occupation, and (3) the incidence of which is substantially greater in that industry or occupation than in the general population." 77 P.S. § 27.1(n).

### B. Proceedings Before the WCJ

Claimant proffered his deposition testimony and argument as to why the Petition should be considered timely. Claimant testified that he verbally advised Woodlawn of his "belief that the cancer was due to [his] fire service" on "the day [he] was diagnosed and met with the doctor." (Reproduced Record (R.R.) at 10a; *see* FOF ¶ 5.) He "followed up via an email requesting [Employer's] position on [the] fire[fighter] presumption," and Employer responded, through Claimant's supervisor at Woodlawn, on February 12, 2018. (R.R. at 10a; FOF ¶ 5.) Employer's specific response is unclear from the record. Claimant indicated he believed the cancer was related to his time as a firefighter with Tri-Clover, rather than his fire police position with Woodlawn. (FOF ¶ 5.) He acknowledged he also advised Tri-Clover of his cancer.

Employer offered a Notice of Compensation Denial issued by North Whitehall Township, the municipality that Tri-Clover serves, on March 1, 2018, denying that Claimant's alleged prostate cancer was work related. (R.R. at 61a.) Employer also filed a Motion to Dismiss, arguing

> that Claimant's testimony establishe[d] that he received the diagnosis in February 2018, advised his [E]mployer . . . of his belief that his work activities and exposure led to the cancer, and yet did not file his [P]etition until January 2023.

(FOF ¶ 4.) Claimant, in response, maintained "that the [s]tatute of [l]imitations [in Section 315] should be tolled [] due to Claimant being given incorrect information," presumably by Employer. (*Id.*)

The WCJ denied the Petition, reasoning that Section 315 requires a claim petition to be filed within three years of the date of a claimed work injury and, if not, "all potential rights under the Act" are extinguished "unless there is an agreement

4

on the compensability of the claim" filed within that period. (*Id.* ¶ 6 (citing *Kocis v. Workers' Comp. Appeal Bd. (Dep't of Lab. & Indus.)*, 733 A.2d 699, 701 (Pa. Cmwlth. 1999)).) This period began, the WCJ found, "when Claimant bec[a]me disabled and kn[e]w[] of the diagnosis and its relation to his employment," which, per Claimant's testimony, was on March 5, 2018, the first date of his disability, or wage loss, related to his prostate cancer. (*Id.*) The WCJ found "that Claimant was aware of his prostate cancer diagnosis and its potential relation to his employment as of February 8, 2018," and that he "did not receive any wages in lieu of compensation from" Employer based on Claimant's testimony. (*Id.* ¶ 8.)

The WCJ rejected Claimant's contention that the three-year period should be tolled due to Claimant not being aware that he could file a claim petition based on his position as a member of the fire police, rather than as a firefighter. Although Claimant acknowledged that Employer "did not intentionally mislead him regarding his right to file the [] Petition, as he was fire police," he argued "the confusion regarding his status and the response of his fire companies unintentionally lulled him into delaying this claim." (*Id.* ¶ 7.) The WCJ disagreed, explaining that Claimant's testimony as to what Employer told him was unclear, but the WCJ presumed that Employer advised him that a claim against it was not valid because he was fire police, resulting in him filing a claim against North Whitehall Township.[5] (*Id.* ¶ 8.)

Claimant's reliance on *Kocis*, the WCJ held, was misplaced because nothing here lulled Claimant into believing Employer was accepting his claim or that he had additional time to file his claim. Rather, Employer told Claimant "the claim was, in

---

[5] Claimant includes in his Reproduced Record emails between himself and Woodlawn and between Woodlawn and Employer, but these emails were not introduced during the WCJ's proceedings. Therefore, they are not part of the record certified to this Court and cannot be considered. *See Brown v. Unemployment Comp. Bd. of Rev.*, 276 A.3d 322, 331 n.13 (Pa. Cmwlth. 2022) ("It is well settled that this Court may not consider extra-record evidence that is not part of the certified record on appeal.").

essence, being denied." (WCJ Decision, Conclusion of Law (COL) ¶ 2.) The WCJ observed that accepting Claimant's argument would "essentially nullify[] the statute of limitations in all cases where [an employer] has issued a Notice of Compensation Denial or otherwise advised a [c]laimant that [the] employer does not believe the individual has a viable claim for benefits." (WCJ Decision at 4 n.2.) Accordingly, the WCJ concluded there was no tolling of Section 315's requirements and, having not been filed within three years of either February 8, 2018 (date of diagnosis) or March 5, 2018 (date of disability), the Petition was untimely. (COL ¶ 2.)

### C. Appeal to the Board

Claimant appealed to the Board, asserting that "Findings of Fact [] 6, 7[,] and 8 are not supported by competent evidence or pertinent authority" and Conclusion of Law "2 is not supported by competent evidence or pertinent authority." (Certified Record (C.R.) Item 6.) Claimant also filed a brief, arguing that Section 315 did not apply and, if it did, he did not know he could make a claim against Employer until just prior to his filing the Petition.[6] (*See* Board Opinion (Op.) at 2.) Employer argued Claimant waived all of his issues on appeal because he did not raise any grounds for his appeal with specificity in his Notice of Appeal. (*Id.*)

The Board noted that the mere listing of findings of fact or conclusions in a notice of appeal "constitutes a failure to raise a claim with any degree of specificity, and issues lacking specificity are waived on appeal" pursuant to the regulation at 34 Pa. Code § 111.11(a) (requiring issues to be raised with specificity in the notice of appeal). (*Id.*) It also noted that the inclusion of issues in a brief filed with "the Board is unavailing if the party does not comply with" this regulation. (*Id.* at 2 n.2 (citing *Matticks v. Workers' Comp. Appeal Bd. (Thomas J. O'Hora Co.)*, 872 A.2d 196 (Pa.

---

[6] This brief is not part of the record certified to the Court by the Board.

Cmwlth. 2005)).) Nonetheless, the Board did not expressly resolve Employer's waiver argument and, instead, addressed Claimant's arguments made in his brief.

The Board affirmed, concluding Section 315 applied and the Petition was not timely filed. The Board rejected Claimant's argument that, pursuant to *Sevanick*, Section 315's 3-year period was supplanted by the 600-week period set forth in Section 301(f) relating to firefighter cancer claims because his cancer was diagnosed after the effective date of the firefighter cancer presumption. The Board reasoned that "*Sevanick* contain[ed] no discussion of the limitations period under Section 315 as it relates to firefighter cancer claims," and involved a dispute as to whether the time period in Section 301(c)(2) (requiring manifestation of an occupational disease to occur within 300 weeks of last employment) or the periods set forth in Section 301(f) governed firefighter cancer claims. (*Id.* at 7-8.) It further observed that this Court, in *Caffey v. Workers' Compensation Appeal Board (City of Philadelphia)*, 185 A.3d 437 (Pa. Cmwlth. 2018), held that both Section 315 and Section 301(f) had to be met and, therefore, a remand in that matter was necessary to determine if the claim petition was timely filed under Section 315.

The Board also disagreed with Claimant's reasoning that the Petition was timely under Section 315 because it "was filed within three years of his 'understanding a claim could be filed against [Employer].'" (Board Op. at 9.) The Board "fail[ed] to see the connection between Claimant's statements in his brief, the testimony as presented, and the relief he s[ought]." (*Id.*) Citing Claimant's testimony that he advised Employer of his diagnosis and his belief it was related to his work on February 8, 2018, and of his resulting disability on March 5, 2018, the Board found nothing in the record that "prevented [him] from filing the [] Petition until January 23, 2023." (*Id.*) It further noted that, while not raised in his appeal, Claimant's prior reliance on *Kocis* was misplaced because there was nothing in the

7

record indicating Claimant was "lulled into believing that his alleged injury would be accepted, or that there was some other reason for him to delay pursuing a claim against [Employer] within the applicable timeframe." (*Id.* at 9 n.4.)

Claimant now petitions this Court for review.[7]

## II. DISCUSSION

Claimant argues the dismissal of the Petition as untimely based on Section 315 is not supported by the law or the record because the 600-week period in Section 301(f) controls, and/or the three-year period did not begin to run until he received a medical opinion confirming the relationship between the prostate cancer and his fire police position with Employer or became aware he could file a viable claim against Employer. Employer responds the Board correctly affirmed the WCJ's Decision and asserts that Claimant did not preserve his current argument regarding the need for medical confirmation to begin the Section 315 limitations period running.[8] We begin with Claimant's arguments based on Section 301(f).

### A. Whether Section 301(f) Supplants Section 315.
#### 1. Parties' Arguments

Claimant argues the Supreme Court, in *Sevanick*, held "that firefighter cancer claims brought for diagnoses subsequent to [Section 301(f)'s enactment in 2011], are exclusively controlled by the filing deadlines established by Section 301(f)," and,

---

[7] This Court's review "is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated." *Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007). "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Comp. Appeal Bd. (Seltzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008).

[8] Employer mentions, in passing, its prior argument that no issue was preserved, but primarily focuses on Claimant not preserving his current contention as to why Section 315's limitations period had not expired by the time he filed the Petition. Given Employer's arguments, we, too, address whether Claimant's current argument has been preserved.

therefore, he had 600 weeks to file the Petition. (Claimant's Brief (Br.) at 9-10 (citing *Sevanick*, 255 A.3d at 216).) Claimant acknowledges that *Sevanick* did not involve Section 315, but asserts that cases involving pre-Section 301(f) diagnoses, like *Caffey*, are distinguishable for that reason. Employer responds that *Sevanick* does not support Claimant's arguments because that case "contains no discussion whatsoever of the three-year . . . [period] under Section 315 as it relates to firefighter cancer claims." (Employer's Br. at 10.) Employer further asserts the plain language of Section 315 demonstrates it applies to **all** injury claims under the Act, including those involving occupational diseases, and that Sections 315 and 301(f) are distinct and both must be met to bring a timely claim.

### 2. Analysis

The Act identifies multiple timeframes in which claims must be filed or within which disability, or wage loss, must occur in order for a claimant to bring a timely claim for compensation. Relevant here, Section 315 imposes a three-year time limit for filing **all** claims for compensation that begins, generally, on the date of injury, or, in the case of an occupational disease, the date the disability caused by the occupational disease begins. 77 P.S. § 602. For occupational diseases, Section 315 provides a discovery period, meaning that where the connection between the occupational disease and the employment is not known, the three-year period does not begin to run until the claimant knows or, through the exercise of reasonable diligence should know, of the injury's existence and its possible relationship to the claimant's employment. *Id.* If a claim for compensation is not filed within this three-year period, it "shall be forever barred." *Id*.

Unlike Section 315's time limit, which is based on when disability occurs and the connection between disease and employment is known or should have been

known, other sections of the Act calculate their time limitations from the last date of employment. Section 301(c)(2) requires that where disability from an occupational disease is the basis of compensation, the "disability must occur within [300] weeks after the last date of employment." 77 P.S. § 411(c)(2). Section 301(f) addresses the compensability of cancers suffered by firefighters and sets forth two timeframes: one related to when a claim must be filed for a claimant to be entitled to a statutory presumption of causation, 300 weeks from last employment as a firefighter; and one related to when any such claim for cancer under Section 108(r) must be filed before it is absolutely barred, 600 weeks from last employment as a firefighter, notwithstanding Section 301(c)(2)'s shorter 300-week period.

In *Sevanick*, the Supreme Court addressed the 300-week period in Section 301(c)(2) and the 600-week period set forth in Section 301(f) and whether both time periods had to be satisfied in order for a firefighter to seek benefits under Section 108(r). The employer there argued the claimant had to establish both that his disability manifested within 300 weeks of his last day of employment (Section 301(c)(2)), **and** that his claim was filed within 600 weeks of his last exposure to the hazard (Section 301(f)), in order for the claim to be timely. The Supreme Court disagreed, citing the use of "notwithstanding" in Section 301(f) as reflecting "an unambiguous indication of [the General Assembly's] intent to separate Section 108(r) firefighter cancer claims **from Section 301(c)(2)'s operation**." *Sevanick*, 255 A.3d at 221 (emphasis added). The high court concluded that, "[b]y its unambiguous terms, a claim by a firefighter under Section 108(r) . . . is controlled by Section 301(f) and **the limitation period in Section 301(c)(2)** has no application to the firefighter's claim." *Id.* at 223 (emphasis added).

Although Claimant asserts *Sevanick* supports his arguments, absent from *Sevanick*'s discussion is any reference to Section 315 or the effect, if any, Section

10

301(f) has on Section 315. The claim at issue in *Sevanick* was filed within one year of the claimant being diagnosed with cancer, 255 A.3d at 216, and, therefore, there was no need for the parties, or the Supreme Court, to address Section 315. "It is axiomatic that every decision must be read against its facts." *Commonwealth v. Stevenson*, 318 A.3d 1264, 1280 (Pa. 2024) (citation and internal quotation marks omitted). Thus, to the extent there may be broad language in *Sevanick* that Claimant interprets as supporting his argument, when that language is viewed against *Sevanick*'s facts, it protects against "slippage in the law" based on the usage of overly general language. *Oliver v. City of Pittsburgh*, 11 A.3d 960, 966 (Pa. 2011).

Importantly, Section 301(f) contains no reference to Section 315. Key to *Sevanick*'s holding that Section 301(f) supplanted Section 301(c)(2) for firefighter cancer claims was the inclusion of **unambiguous** statutory language to that effect. 255 A.3d at 221, 223. No such unambiguous language exists in Section 301(f) as to Section 315. Instead, the Court must examine the plain language of Section 315 that unambiguously states that it applies to "**all claims**," including occupational diseases. 77 P.S. § 602 (emphasis added). Unlike in Section 301(f), there is nothing in Section 315 that excepts any type of personal injury or occupational disease from the time periods imposed therein. Based on the unambiguous language of Section 315, to which we must give effect because it is the best indicator of the General Assembly's intent, *Sevanick*, 255 A.3d at 220, and the lack of reference to that provision in Section 301(f), we are unpersuaded by Claimant's arguments that the General Assembly intended Section 301(f) to supplant Section 315.

This conclusion is consistent with our precedent involving firefighter cancer claims. We have recognized that Sections 301(f) and 315 have different "triggering" events, and that "the 'triggering event' for the purposes of Section 301(f) is not the date of injury or disability, as in Section 315, but rather the claimant's last day at

11

work with exposure to a known Group 1 carcinogen." *Fargo v. Workers' Comp. Appeal Bd. (City of Philadelphia)*, 148 A.3d 514, 522 (Pa. Cmwlth. 2016); *see also Campbell v. Workers' Comp. Appeal Bd. (City of Philadelphia)* (Pa. Cmwlth., No. 1031 C.D. 2016, filed Mar. 3, 2017), slip op. at 9; *Lucas v. Workers' Comp. Appeal Bd. (City of Sharon)* (Pa. Cmwlth., No. 2606 C.D. 2015, filed Dec. 20, 2016), slip op. at 15-16.

In *Fargo*, the claimant, like Claimant here, argued that the 600-week period of Section 301(f) superseded the 3-year limitations period set forth in Section 315. 148 A.3d at 521. We were not persuaded by this argument, holding it was

> **unsupported by the text of the Act as neither Section 301(f) nor Section 108(r) state that Section 315 is inapplicable to Section 108(r) claims**. Furthermore, the **600-week limitation of Section 301(f) does not conflict with the application of the discovery rule to Section 315** as the three-year limitations period of Section 315 may still be tolled in Section 108(r) cases where the claimant was not aware of the nature of his occupational disease, provided that the claim is filed before the expiration of the 600-week period.

*Id.* at 521-22 (emphasis added). We also held, in *Caffey*, that a claimant had to establish that the claim petition was filed within the three years required by Section 315, subject to the discovery rule, **in addition** to meeting the Section 301(f) requirements. 185 A.3d at 446. Thus, these cases support the Board's conclusion that the provisions of Sections 301(f) and 315 are different, and **both** have to be satisfied to establish a valid claim. *Id.*; *Fargo*, 148 A.3d at 521-22. Claimant asserts these are distinguishable due to the date of diagnosis, but the Courts relied on the statutory language itself, rather than any particular fact, to conclude Section 315 remains applicable to firefighter cancer claims.

Although we appreciate the arguments, for these reasons, we cannot hold that the 600-week period in Section 301(f) has supplanted the 300-week limitations

period set forth in Section 315. Accordingly, we must conclude that the Board properly affirmed the dismissal of the Petition as untimely.

## B. Whether the Petition was Timely Under Section 315.
### 1. Parties' Arguments

Alternatively, Claimant argues that, if Section 315 does apply, the Petition should not have been dismissed as untimely. Claimant asserts the 3-year period in Section 315 did not begin to run until he had medical confirmation of the relationship between his prostate cancer and position with Employer, of which there is none in the record, citing cases relating to the tolling of the 120-day notice period under Section 311 of the Act, 77 P.S. § 631 (requiring that claimants provide notice to the employer within 120 days of sustaining a work-related injury). According to Claimant, his "uninformed lay" opinion or suspicion of the connection was insufficient under these cases to start the Section 315 three-year period running. (Claimant's Br. at 12-13.) Claimant further asserts it was error to dismiss the Petition under Section 315 because Employer "did not accept his verbal and written notice and did not file a Notice of Compensation Denial," and he did not know he could file a "[v]iable [c]laim" against Employer until shortly before he filed the Petition. (*Id.* at 12, 16-17.) As there is no "competent evidence that establishes [Claimant] knew he could file a cancer claim against [Employer] in 2018," Claimant asks this Court to reverse the denial of the Petition as untimely. (*Id.* at 17.)

Employer responds that Claimant bears the burden of proving all the elements necessary to obtain workers' compensation benefits, which include the timely filing of a claim petition. Employer asserts that Claimant's argument that his Petition should be accepted as timely because of a lack of confirming medical opinion is waived because it was not raised below.[9] It also asserts this argument is misplaced

---

[9] Claimant did not file a reply brief responding to Employer's waiver claims.

because there is no per se rule requiring such opinion to toll the Section 315 limitations period, and the cases Claimant relies upon are distinguishable. Employer further argues that Claimant never presented evidence that he did not know the connection between the cancer and his work until he received a medical opinion or otherwise did not know he could file a claim against Employer until just before the Petition's filing. The latter position, Employer argues, is not relevant to whether a claim is timely filed. Based on Claimant's testimony and the WCJ's factual findings, Employer maintains there is nothing in this record that supports Claimant's contrary contentions.

Employer additionally asserts that Claimant bore the burden of proving that the limitations period should be tolled through the payment of compensation in lieu of benefits, or due to actions by Employer that lulled Claimant into believing the claim was accepted or that he had more time to file a claim than he did – none of which occurred here. Employer argues the discovery rule is inapplicable because Claimant did not present evidence to the WCJ, through his deposition testimony, that supports the tolling of that time. Rather, Employer maintains, Claimant's own testimony reflects that he advised Employer of his cancer diagnosis and his belief that it was related to his fire service on the same day as his diagnosis, and this testimony constitutes substantial evidence to support the WCJ's findings as to the untimeliness of the Petition.

2. Analysis
a. Waiver

The doctrine of waiver applies in workers' compensation proceedings. *Jonathan Sheppard Stables v. Workers' Comp. Appeal Bd. (Wyatt)*, 739 A.2d 1084, 1088 (Pa. Cmwlth. 1999). "An issue is waived unless it is preserved at every stage of the proceedings." *Riley v. Workers' Comp. Appeal Bd. (DPW/Norristown State*

14

*Hosp.)*, 997 A.2d 382, 388 (Pa. Cmwlth. 2010); *see also* Pennsylvania Rule of Appellate Procedure 1551(a), Pa.R.A.P. 1551(a) (stating that "[o]nly questions raised before the government unit shall be heard or considered" with few exceptions not applicable here).

A review of the record and current briefing reflects that Claimant's explanations for why the Petition should not have been dismissed pursuant to Section 315 have evolved, but they have not, until now, included this currently asserted reason. However, Claimant has consistently argued at each stage of this litigation that, if Section 315 applied, the time had not yet run under that provision. While his arguments may have changed throughout these proceedings, they all related to and raised the same legal issue: that Section 315's limitations period had been tolled for some reason prior to the filing of the Petition.

We have held that where a legal **issue** is raised and preserved for review, a petitioner may make "additional legal arguments on those preserved issues" because Pa.R.A.P. 1551(a) requires that "questions" be preserved, not necessarily "reasoning" with regard to those questions. *See Wolk v. Sch. Dist. of Lower Merion*, 228 A.3d 595, 604 (Pa. Cmwlth. 2020) (addressing issue preservation under Pennsylvania Rule of Appellate Procedure 302(a), Pa.R.A.P. 302(a), for appeals from courts of common pleas); *Grant St. Grp., Inc. v. Dep't of Cmty. & Econ. Dev.*, 106 A.3d 810, 815 (Pa. Cmwlth. 2014) (holding that argument was not waived pursuant to Pa.R.A.P. 1551(a) where it was "fairly subsumed in th[e] broader argument" presented before the agency and was arguably an expansion of that argument). Our Supreme Court has held that "the critical inquiry is whether a party is raising a wholly new legal theory, or is merely strengthening its previously articulated argument with additional legal authority." *HIKO Energy, LLC, v. Pa. Pub. Util. Comm'n*, 209 A.3d 246, 262 (Pa. 2019). If the basic legal theory or claim

15

is the same as initially set forth, then there is no waiver where additional legal authority is presented in support of those theories or claims. *Id.* (citing *Allegheny County v. Commonwealth*, 490 A.2d 402, 413 n.9 (Pa. 1985)). Because Claimant's current arguments can be viewed as "strengthening [his] previously articulated argument" that Section 315 had not yet begun to run "with additional legal authority," we decline to find waiver.

### b. Merits

It is well-settled law that a claimant bears the burden of proving "a right to compensation and of proving all necessary elements to support an award." *Inglis House v. Workmen's Comp. Appeal Bd. (Reedy)*, 634 A.2d 592, 595 (Pa. 1993). This includes proving that the claim petition was filed within three years as required by Section 315 or that there is a reason for the tolling of that period. 77 P.S. § 602; *Kocis*, 733 A.2d at 701. As this matter involves an occupational disease, the three-year period begins to run when a claimant "knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its **possible** relationship to his employment." 77 P.S. § 602 (emphasis added).

Claimant essentially argues the WCJ erred in finding that the three-year period began to run in February 2018, and then expired, because there is no evidence that he received medical confirmation of the relationship between his cancer and his work for Employer or that he was aware he could file a "valid" claim against Employer. These arguments disregard the evidence in this matter and misunderstand who bears the burden of proving the timeliness of a claim petition.

There is no dispute the Petition was filed more than three years after Claimant was diagnosed with and disabled by prostate cancer, which occurred in, respectively, February 2018 and March 2018. It is also undisputed that Claimant advised

Employer of his cancer diagnosis in February 2018. Thus, on its face, the Petition would appear to be untimely, and Claimant had to establish that there is a reason to toll the running of the three-year period under Section 315. Notwithstanding his current arguments as to the alleged lack of medical confirmation, the only evidence **in the record** that Claimant can rely upon to meet his burden of proof was his testimony.

Claimant testified to giving notice to Employer about his cancer diagnosis in February 2018, as follows.

> [Claimant's Counsel:] Now **after you were diagnosed with prostate cancer** in February of 2018, **did you notify** a supervisor at **Woodlawn of your belief the cancer was due to your fire service**?
>
> [Claimant:] **Yes, I did**.
>
> [Claimant's Counsel:] How did you do that?
>
> [Claimant:] Verbally, **the day I was diagnosed[] and met with the doctor**, and then I followed up via an email requesting [Employer's] position on fire presumption.
>
> . . . .
>
> [Claimant:] . . . The chiefs replied to me saying what the[ir] position was [and this reply] is dated February 12th, 2018. But the diagnosis was [on] February 8th.
>
> [Claimant's Counsel:] **So you notified them within one week**?
>
> [Claimant:] **Correct**.
>
> . . . .
>
> [Employer's Counsel:] [] Do **you agree** that **you said** you sent an email and received an email back from your supervisor at Woodlawn . . . that **you were diagnosed with prostate cancer back on February 6, 2018[,] and what you thought was related to your work with [Employer]**. Is that true?

17

[Claimant:] **True**.

(R.R. at 10a-11a, 32a-33a (emphasis added).) Through the questioning of his own counsel, and again on cross-examination, Claimant acknowledged he communicated his diagnosis and belief that his cancer was related to his fire service to Employer on February 8, 2018, **on the same day he met with his diagnosing physician**. (*Id.* at 10a, 32a-33a.)

The WCJ found this testimony supported a finding that the three-year period under Section 315 began to run in February 2018, or in March 2018 when Claimant suffered a loss of earnings. "Substantial evidence is such relevant evidence a reasonable mind might accept as adequate to support a conclusion." *WAWA v. Workers' Comp. Appeal Bd. (Selzer)*, 951 A.2d 405, 407 n.4 (Pa. Cmwlth. 2008). "In performing a substantial evidence analysis, we must view the evidence, and every reasonable inference deducible from the evidence, in the light most favorable to the prevailing party." *Id.* A reasonable mind could accept Claimant's testimony, and the inferences reasonably drawn therefrom, as establishing that he knew "of the existence of the injury and its **possible** relationship to his employment," 77 P.S. § 602 (emphasis added), and provided notice thereof. Thus, the WCJ's finding as to when the three-year period began is supported by substantial evidence and is, therefore, binding on appeal. *Bethenergy Mines, Inc. v. Workmen's Comp. Appeal Bd. (Skirpan)*, 612 A.2d 434, 437 (Pa. 1992).

Claimant maintains that the Section 315 limitations period did not begin to run until he received confirmation from a physician (an opinion that he did not provide), presenting this as a per se rule. However, we previously rejected such a per se rule as being "illogical" and inconsistent with Section 311, which, like Section

18

315, contains a "reasonable diligence" requirement,[10] in *East Hempfield Township v. Workers' Compensation Appeal Board (Stahl)*, 189 A.3d 1114, 1119 (Pa. Cmwlth. 2018). In doing so, we explained,

> [w]hile it is true that sufficient knowledge for the purposes of notice requires more than an employee's suspicion, to hold that the [] notice period can *only* begin once a claimant receives a physician's confirmation **would be illogical. Such a holding would not only provide a claimant with a potentially unlimited timeframe in which to provide notice,**[11] **but it would also serve to nullify the reasonable diligence requirement** .... Had the General Assembly intended to require a physician's confirmation to serve as the start of the notice period, it could have included straightforward language in the Act to the effect.

*Id.* (emphasis in original). Moreover, even if confirmation was required, Claimant testified that he advised Woodlawn of his diagnosis and belief the cancer was related to his fire service work **on the same day he met with his physician**. (R.R. at 10a-11a.) This testimony reflects more than simply an "uninformed lay suspicion," as Claimant now claims he had. (Claimant's Br. at 12.)

Claimant's second argument, that the Petition was timely because there is nothing in the record to show that he was aware he could file a "viable claim" against

---

[10] Section 311 states, in pertinent part, that the time for a claimant to provide notice of a work injury to an employer

> resulting from . . . any [] cause in which the nature of the injury or its relationship to the employment is not known to the employe, . . . shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.

77 P.S. § 631.

[11] This same concern exists here. A careful reading of Claimant's argument suggests that his position is that the Section 315 period **never** began to run due to the lack of medical confirmation, (*see* Claimant's Br. at 14-15), a position that would seemingly "provide [him] with a potentially unlimited timeframe in which to" file a claim petition, *East Hempfield Township*, 189 A.3d at 1119.

19

Employer in 2018, fares no better. Nothing in Section 315 ties the commencement of the three-year period, or tolling of that period, to a claimant's knowledge that a claim would be "viable." Moreover, Claimant's argument disregards his testimony that, as of February and March 2018, he had been diagnosed with prostate cancer, he believed it was related to his fire service, he advised Employer (through Woodlawn) of this diagnosis and belief, and he had to stop working due to the cancer resulting in a wage loss. As the Board noted, there is nothing in the record reflecting that Employer lulled Claimant into believing it was accepting the claim or that he had more time to file a claim petition, thereby causing Claimant to not file, or delay filing, a claim petition. (*See* Board Op. at 9 & n.4.) Rather, it appears, Employer advised Claimant that it did not agree that it could be liable. This did not, however, prevent Claimant from filing a claim petition if he disagreed with that view; if anything, it put Claimant on notice that he would have to do something in order to obtain workers' compensation benefits from Employer. We agree with the WCJ that accepting Claimant's argument would mean that anytime an employer disagrees that a claim exists, Section 315's limitations period is tolled if a claimant later obtains an opinion that the claim is viable. (WCJ Decision at 4 n.2.) This would provide an unlimited timeframe, contrary to the requirements of the Act.

Ultimately, Claimant bore the burden of proving the timeliness of the Petition under Section 315. To meet that burden, some claimants have presented evidence showing that an employer paid them compensation during the three-year period or lulled them into believing that their claims were accepted or misled them into delaying the filing of a claim or that they did not learn of the possible relationship between the two from a physician until later. However, no such evidence was presented here. Claimant's argument that there is no evidence supporting the start of the Section 315 limitations period disregards his testimony, which supports the

20

WCJ's contrary determination. Because Claimant did not establish that the Petition was filed within the period required by Section 315, the Board did not err in affirming the dismissal of the Petition as untimely.

## III. CONCLUSION

For the foregoing reasons, we are constrained to conclude that the 600-week period in Section 301(f) does **not** supplant the 3-year period in Section 315 for firefighter cancer claims, and Claimant did not establish that the Petition was filed within the 3-year period required by Section 315, making it untimely. Accordingly, we affirm the Board's Order.

_____
RENÉE COHN JUBELIRER, President Judge

Judge Dumas did not participate in the consideration of this matter.

21

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Gilbert,                          :
                    Petitioner          :
                                        :
            v.                          :   No. 650 C.D. 2024
                                        :
South Whitehall Township                :
(Workers' Compensation Appeal           :
Board),                                 :
                    Respondent          :

## **O R D E R**


   **NOW**, June 12, 2025, the May 9, 2024 Order of the Workers' Compensation Appeal Board, entered in the above-captioned matter, is **AFFIRMED**.


_____
RENÉE COHN JUBELIRER, President Judge